ANDERSON, Respondent

v.

CACTUS HEIGHTS COUNTRY CLUB et al., Appellants

(125 N.W.2d 491)

(File No. 10051. Opinion filed December 26, 1963)

**T. R. Johnson, Danforth, Danforth & Johnson,** and **Kenneth C. Hanson,** Sioux Falls, for Defendants and Appellants.

**Charles Lacey,** Sioux Falls, for Plaintiff and Respondent.

ROBERTS, J. Defendants appeal from a judgment awarding plaintiff damages in the sum of $6,316.50 with interest for the breach of a written contract. The contract provides that the plaintiff (described as "second party") agrees to plan, design and lay out a golf course upon lands occupied by the defendant Cactus Heights Country Club (described as "first party") and to superintend, direct and assist workmen and others employed by defendant country club in laying out, preparing and constructing an eighteen hole golf course. Plaintiff remained in the employ of the defendant country club from September 15, 1958 to October 19, 1961, at which time, plaintiff alleges, he was discharged without just cause.

The contract provides that the second party receive the "lump sum of $5,000.00 upon completion of the first nine (9) holes of said golf course payable at the rate of $500.00 per month during the continuance of the work on the said nine hole course" and the "sum of $7,200.00 per year commencing at the completion of said nine hole golf course payable at the rate of $600.00 per month, for a period of ten years." A liquidating damage clause provides: "It is understood and agreed that second party is furnishing his knowledge, skill, experience and training in designing, superintending and laying out the whole of said golf course and in further consideration of this ten year contract of employment as above provided and in the event the first party desires to terminate this contract, without good cause, prior to the expiration thereof, first party shall pay to the second party as liquidated damages the sum of $8,000.00 if the contract be terminated within one year after the date of this contract; and the sum of $8,000.00 less the sum of $800.00 for each year of second party's employment if this contract be terminated any other time during the ten year period aforementioned; provided, however, that in the event of any breach of this agreement by second party or any flagrant misconduct or wilful disobedience on his part or upon his failure to superintend and direct the maintenance of the golf course and grounds in accordance with the standards of skill and care required by the Minnesota Golf Course Superintendents Association, the first party shall have the option to forthwith terminate this contract, in which event it shall not be required to pay any sum or sums as liquidated damages, and pro-

vided further that in the event the first party for any reason shall divert the property to a use other than as a golf course or shall decide and determine that it will not operate or maintain a golf course upon said land during the life of this contract, then and in that event, the first party may upon ninety (90) days notice to the second party terminate this contract without a payment of any sum or sums as liquidated damages."

Attached to the contract is an instrument entitled "Guarantee" and signed by defendant Merton H. Peterson wherein he "guarantees the due performance" by the Cactus Heights Country Club "of all covenants and agreements on its part contained and the payment of all sums due second party as provided therein, provided, however, that this guarantee is conditioned on the second party securing the approval of the undersigned prior to ordering or purchasing any machines, implements or materials or hiring or employing workmen or other employees in the designing, laying out and construction of the golf course described in said agreement."

Plaintiff alleged and there was evidence which permitted the jury to find defaults in the payment of wages in the amount of $3,516.50 with interest. The principal inquiry before us is whether the remaining portion of the verdict can be sustained. Defendants contend that the provision in the contract is insufficient in itself to sustain that portion of the verdict as liquidated damages.

A person having the right to a promised performance is entitled, if it is not forthcoming when due, to damages in an amount which will compensate him for the detriment caused thereby. SDC 37.1801. It is generally recognized that parties may agree to the amount to be paid in the event of a breach if it is the result of a reasonable endeavor by the parties to provide only fair compensation for the loss that may be sustained and not to penalize the defaulting party. International Milling Co. v. Reierson, 55 S.D. 139, 225 N.W. 218. SDC 10.0704 in accord with the general law provides: "Every contract in which amount of damage or compensation for breach of an obligation is determined in anticipation thereof is void to that extent except the parties may agree therein upon an amount presumed to be the damage for breach in

cases where it would be impractical or extremely difficult to fix actual damage." A stipulation in a contract for liquidated damages is void unless it is shown that the case comes within the statutory exception. Seim v. Krause, 13 S.D. 530, 83 N.W. 583; Fitzgerald v. City of Huron, 47 S.D. 533, 199 N.W. 775. Although entitled to some weight, the language of the parties in characterizing the damages fixed is not controlling. Utley v. Dunning, 38 S.D. 447, 161 N.W. 813; Harden v. Richards, 41 S.D. 415, 171 N.W. 89; First Loan & Trust Co. v. Schanche, 48 S.D. 86, 202 N.W. 390. A provision for payment of a stipulated sum as a liquidation of damages will ordinarily be sustained if it appears that at the time the contract was made the damages in the event of a breach will be incapable or very difficult of accurate estimation, that there was a reasonable endeavor by the parties as stated to fix fair compensation, and that the amount stipulated bears a reasonable relation to probable damages and not disproportionate to any damages reasonably to be anticipated. Better Food Markets v. American Dist. Telegraph Co., 40 Cal. 2d 179, 253 P.2d 10, 42 A.L.R.2d 580; Electrical Products Corp. v. Williams, 117 Cal. App.2d Supp. 813, 256 P.2d 403; Berger v. Shanahan, 142 Conn. 726, 118 A.2d 311; 5 Corbin on Contracts § 1059. The purpose is to require observance of the principle of fair compensation.

■ The contract here was for rendition of personal services by plaintiff. The courts have in many instances construed specified amounts for breach of employment contracts as liquidated damages because the damage that a breach would cause would be uncertain and difficult of proof. 25 C.J.S. Damages, § 113f; Secord v. Portland Shopping News, 126 Or. 218, 269 P. 228; Werner v. Finley, 144 Mo.App. 554, 129 S.W. 73; Zeppenfeld v. Morgan, Mo.App., 185 S.W.2d 898; Berger v. Shanahan, supra. There may be different degrees of nonperformance and injury may result in varying amounts. Discussions of the question of an identical amount made payable without regard to the kind of breach or extent of injury may be found in 15 Am.Jur., Damages, § 253; 5 Williston on Contracts, Third Ed., § 784; 5 Corbin on Contracts, § 1066; Vol. 1, Sedgwick on Damages, 9th Ed., § 413. There would be much less time for which defendant would be liable if a breach occurred near the end of the term of the contract than if there was a total breach. To this end the parties agreed to gradu-

ate the amount payable according to the extent of nonperform-
ance. The amount payable was $8,000 "less the sum of $800
for each year" that plaintiff was engaged before breach in per-
formance of the contract and the amount recoverable was not
disproportionate to the actual damages which might result from
failure to perform. The trial court held that the construction and
meaning of the contract was for the court and that the contractual
provisions under consideration were for liquidated damages
rather than for a penalty. We think that the conditions necessary
to bring the contractual provisions for fixed damages in the event
of breach within the exception contained in Sec: 10.0704, supra,
were satisfied and that the court was, therefore, warranted in con-
cluding that the contractual provisions in question were valid and
enforceable. As bearing on the question as to whether a particu-
lar provision is for liquidated damages or penalty is one at law
see Better Food Markets v. American Dist. Telegraph Co., supra;
McMurray v. Faust, 224 Iowa 50, 276 N.W. 95; Huntsman v. Eldon
Miller, Inc., 251 Iowa 478, 101 N.W.2d 531; Nichols v. Seaks, 296
Mich. 154, 295 N.W. 596; Montague v. Robinson, 122 Ark. 163,
182 S.W. 558; Annotation in 58 A.L.R. 156, 170 subd. VIII.

■ Defendants further contend that plaintiff failed to make
a submissible case for the jury. They rely upon the second ground
of their motion for directed verdict and for judgment n. o. v. It
was therein urged: "The undisputed record shows that the con-
tract in question was altered by an executed, oral agreement,
and that pursuant thereto, the plaintiff was paid and accepted all
sums due in accordance therewith." It is elementary that when
the refusal of the trial court to direct a verdict is attacked on ap-
peal the review by this court begins and ends with a determina-
tion as to whether there is any substantial evidence which sup-
ports the conclusion of the jury. Hansen v. Isaak, 70 S.D. 529,
19 N.W.2d 521; Snell v. Watts, 77 S.D. 534, 95 N.W. 453.

■ Under the terms of the contract plaintiff was employed
not only to design and construct a golf course, but also to super-
intend and maintain the grounds for a period of ten years. It is
not claimed that defendants prior to July 7, 1960, failed to carry
out the terms of the contract and to pay the amount of wages
agreed therein. The complaint might well have been more defi-

nite, but it was sufficient to advise defendants of plaintiff's claim for a balance due for wages earned in the amount of $600 per month from July 7, 1960, until he was compelled to abandon his contract and interest thereon. For the months of October, November and December, 1960, plaintiff was paid $200 per month and for each of the months of January and February, 1961, $300. The other monthly payments during this period were at the rate of $500 per month. Plaintiff's evidence was that he had conversations with defendant Peterson in the fall of 1960 about payment of wages during the winter; that when asked if he could wait for his "money until a later date until funds were available" and if he would accept $200 a month, plaintiff replied, "I would as long as I got my money, the balance of it, at a future date"; and that later he told Mr. Peterson he "couldn't get along with $200" and that he then answered affirmatively when asked if he "could get along with $300". The evidence went into more detail than we have outlined, but plaintiff's evidence together with permissible inferences made a submissible case for the jury as to whether the contract between the parties had been modified by an executed oral agreement.

■ Defendants assign as error the admission in evidence of a letter written by plaintiff's attorney to the defendants on October 16, 1961, which, omitting formal parts, reads as follows:

"Mr. Clifford A. Anderson has referred to me your communication dated October 4, 1961 and entitled 'Agreement.' It is a matter of great disappointment to Mr. Anderson to learn that you desire to terminate his contract. He would still very much prefer to remain with you throughout the term of the contract and develop the golf course to the fullest extent of its fine capabilities.

"Mr. Anderson has performed all terms and conditions of his contract with Cactus Heights Country Club dated September 15, 1958 and executed on October 31, 1958 as guaranteed by Merton H. Peterson by Guarantee dated October 31, 1958, and he is ready, willing and able to continue in such performance. The sum of $2,700.00 is past due under the contract and Mr. Anderson will be

entitled to $600.00 for the current month. If you wish to terminate the contract, Mr. Anderson will be entitled to $5,600.00 under the liquidated damage provision under Subdivision C of Paragraph 6, Page 2 of the Contract.

"Accordingly, upon payment to Mr. Anderson of the sum of $8,900.00, according to the terms of his contract, he is willing to surrender it."

The agreement referred to in the letter was prepared and submitted for the signature of the plaintiff. It contained these recitals: "Due to the fact that the expenditures in constructing the first nine holes of the golf course at Cactus Heights have now exceeded by more than twice the original estimate of the entire golf course, the Club finds at this time it is unable to carry Mr. Clifford A. Anderson on the payroll during the coming winter months. The original completion time for the first nine holes was June, 1959 and due to the delays and the extra money expended, the Club has extended itself to the fullest in finances. Due to these facts, the Club is aware that Mr. Anderson is investigating other employment. In lieu of this fact, it is hereby mutually agreed that any prior agreements are hereby agreed to be null and void and of no effect." This evidence and the letter, defendants contend, were self-serving and prejudicial.

After being asked if he and Mr. Marker, manager of the golf course, had talked with plaintiff immediately prior to preparation of the statement referred to, defendant Peterson testified: "Q. What was said then? A. Well, this was brought about by the fact that I told him that we would not be able to carry him through the winter of 1961 and 1962, and he approached Mr. Marker and myself, requesting a recommendation; he was going to look for other jobs, and he told us he had a couple jobs located in Minneapolis or St. Paul, he needed a recommendation, and wanted to know if we would give him a recommendation. Q. All right. What did you tell him then? A. Well, we told him that that would be fine if he could find other employment because we couldn't employ him after the work stopped in the fall of 1961, and—but we thought that if we were going to give him a recommendation, then we needed a release of all obligations that the Club might

have to Mr. Anderson. * * * Q. And what did he say then when he got this exhibit? A. He said that he would take it and look at it and let us know. Q. And did he ever return this exhibit to you? A. Never returned it. Q. And did you ever hear from him again? A. A few days after Mr. Anderson received this exhibit, I received a notice from his attorney that he was suing us. Q. You mean a summons or a letter? A. A letter." Defendants claimed in the trial below that plaintiff of his own volition had quit his employment and had not been discharged. The written acquiescence in termination of employment which plaintiff was asked to sign was prepared by defendant Peterson and was not inadmissible for any reason urged by defendants. A party cannot, of course, make evidence for himself by writing a letter containing statements that he wishes to prove. Leach & Co. v. Peirson, 275 U.S. 120, 48 S.Ct. 57, 72 L.Ed. 194; 31 C.J.S. Evidence, § 216. A part of the letter introduced was admissible for purpose of showing refusal to sign the statement submitted and demand that defendants carry out the terms of the contract. The letter may otherwise have been self-serving, but we think it was of little, if any, probative value and only cumulative of what was otherwise testified to and that any error in that regard was harmless.

■ ■ On cross-examination, defendant Peterson was asked: "Q. And you own practically all of the stock in the Cactus Heights Country Club, the defendant corporation in this case, at this time, don't you?" Litigants are entitled in an action for compensatory damages to a trial on the merits without regard to their financial status. Stratton v. Sioux Falls Traction System, 55 S.D. 464, 226 N.W. 644. Defendants argue that prejudice resulted for the same reason that in a personal injury action the mere mention of insurance coverage is reversible error. The question was not as to defendant's general financial status and objection thereto was sustained by the court. We cannot agree that the question was of such a nature as to leave an inference that defendant was wealthy and necessarily influenced the jurors in consideration of the merits.

Judgment affirmed.

All the Judges concur.