Jacob J. HOFER et al., Plaintiffs and Appellants,

v.

W. M. SCOTT LIVESTOCK COMPANY, a North Dakota corporation, and Edna N. Scott, Defendants and Respondents.

Civ. No. 8826.

Supreme Court of North Dakota.

Sept. 20, 1972.

Rehearing Denied Nov. 1, 1972.

Wattam, Vogel, Vogel & Peterson, Fargo, and Douglass, Bell, Donlin, Shultz & Petersen, St. Paul, Minn., for plaintiffs and appellants.

Conmy, Feste, DeMars & Bossart, Fargo, for defendants and respondents.

ERICKSTAD, Judge, on reassignment.

On the 23rd of October 1968 the Sand Lake Hutterian Brethren Association en-

tered into a written contract with the W. M. Scott Livestock Co., a North Dakota corporation, and Preston W. Scott, to purchase for $344,780 approximately 2,200 acres of land in South Dakota. The Brethren were to pay $50,000 on the date of the contract and the balance on or before December 20, 1968. The purchaser took the property subject to any and all easements of record and all outstanding leases or rental agreements.

By complaint dated the 14th of April 1970, the Brethren initiated an action in North Dakota to secure a rescission of the contract and a return of the down payment of $50,000. Count No. 1 of the complaint asserts that the defendant Edna M. Scott, with the intent to deceive and defraud the Brethren, falsely and fraudulently represented to the Brethren that the property was not subject to oral leases, that possession of the property would be delivered to the Brethren by January 1, 1969, and that the Brethren could begin construction of a building upon the premises within a week after notice had been sent to the tenants, when in fact the property was subject to oral leases and the defendants could not and did not intend to transfer possession of the property by January 1, 1969.

Count No. 2 asserts that the Brethren mistakenly believed and were led by the defendants to believe that the property was not subject to any oral leases, and that they could obtain possession of the property by January 1, 1969, when in fact the property was subject to oral leases for times running beyond January 1, 1969.

Count No. 3 asserts that because of the defendants' failure and refusal to deliver possession and title and to permit the Brethren to begin building construction, the consideration for the contract failed in a material respect.

Count No. 4, after stating that the Brethren were forced to buy other property when they could not secure possession, asserts that the defendants did not deliver, could not have delivered, and refused to deliver possession and title to them, all in breach of the contract.

The defendants generally deny all allegations of the complaint.

The trial court, after reviewing the allegations of the complaint in light of the evidence, found for the defendants and against the Brethren on each of the counts. In addition to those findings, the court concluded that the liquidated-damages feature of the contract was legal under South Dakota law.

By notice of appeal, dated January 6, 1972, the defendants appeal from the judgment entered pursuant to said order dismissing the complaint. The specifications of error filed with the notice of appeal indicate that the Brethren raise in this court only one basic issue: whether the trial court erred in concluding that the liquidated-damages provision of the contract is legal.

The specifications of error follow:

"I.

"The Court erred in finding that the plaintiffs and defendants in fact negotiated and entered into a 'package deal' for the purchase and sale of the property listed in plaintiffs' Exhibit 7.

"II.

"The Court erred in finding that the parties made every reasonable endeavor to fix a fair compensation in the event of a default by the plaintiffs.

"III.

"The Court erred in finding that the $50,000.00 amount stipulated as liquidated damages in the earnest money contract bears a reasonable relation to probable damages and is not disproportionate to any damages reasonably to be anticipated in the transaction entered into.

"IV.

"The Court erred in concluding that no part of the $50,000.00 stipulated in the contract as liquidated damages can be recovered by the plaintiffs on the theory that the amount stipulated constitutes a penalty."

The pertinent South Dakota statutes follow:

"53-9-4. Penalties for nonperformance of contract void, exceptions.—Penalties imposed by contract for any nonperformance thereof are void. This section does not void obligations penal in form such as heretofore have been commonly used, but it voids their penal clauses."

"53-9-5. Contracts fixing damages void, exception.—Every contract in which amount of damage or compensation for breach of an obligation is determined in anticipation thereof is void to that extent except the parties may agree therein upon an amount presumed to be the damage for breach in cases where it would be impracticable or extremely difficult to fix actual damage."

South Dakota Compiled Laws, 1967, Annotated.

That part of the contract in issue states, in essence, that if a warranty deed conveying good and merchantable title to the property is tendered to the Brethren within ninety days of the date set for the last payment on the contract and the Brethren refuse to accept title and refuse to make the final payment, $50,000 shall be forfeited to the corporation as liquidated damages.

The Brethren contend that this provision is a penalty prohibited by Section 53-9-4. The corporation contends that the provision is lawful as an exception under Section 53-9-5.

The Brethren rely upon Anderson v. Cactus Heights Country Club, 80 S.D. 417, 125 N.W.2d 491, a 1963 decision.

In that decision, Justice Roberts, speaking for the entire court, laid down the ground rules to be applied in determining when a stipulated sum as liquidated damages could be sustained. We quote:

"A provision for payment of a stipulated sum as a liquidation of damages will ordinarily be sustained if it appears that at the time the contract was made the damages in the event of a breach will be incapable or very difficult of accurate estimation, that there was a reasonable endeavor by the parties as stated to fix fair compensation, and that the amount stipulated bears a reasonable relation to probable damages and not disproportionate to any damages reasonably to be anticipated." Anderson v. Cactus Heights Country Club, *supra*, 125 N.W.2d 491, 493.

In that case, the Country Club agreed to pay the plaintiff $5,000 on completion of the first nine holes, and $7,200 per year for finishing another nine holes and for caring for its golf course for a period of ten years. The contract contained a liquidated-damages clause to the effect that the Country Club would pay the plaintiff $8,000 if the contract were terminated within one year of the date of the contract, and the sum of $8,000 less the sum of $800 for each year of the plaintiff's employment if the contract were terminated any other time during the ten-year period.

Without discussing specifically the factors enumerated by the court as pertinent to a determination of the issue, the court concluded (after emphasizing the feature of the contract which reduced the liquidated damages in accordance with the years of the plaintiff's employment) that the conditions necessary to bring the contract within the exception of the Code had been satisfied.

The Brethren contend that only the first of the conditions has been satisfied in the instant case. In other words, the Brethren concede that at the time the contract was entered into it would have been difficult

for the parties to have accurately estimated the damages that would occur in the event of a breach. They do, however, contend that there was not a reasonable endeavor by the parties to fix a fair compensation and that the $50,000 stipulated bears no reasonable relationship to the probable damages which would result from a breach and that it is disproportionate to any damages reasonably to be anticipated.

In support of this contention, the Brethren assert that no attempt was made by the parties at any time to fix a fair compensation or to estimate the probable damages which would result from a breach.

The testimony of Paul Kleinsasser, the secretary of the parent colony, who participated in the early negotiations, was to the effect that in the beginning Mrs. Scott wanted all of the money in the earnest money contract as a down payment for the package. It was explained that the package was to include approximately 4400 additional acres and that the total purchase price would then approach $800,000. The so-called earnest money contract covered the 2200 acres and was for $344,780. Kleinsasser stated that when Mrs. Scott was told that the Brethren could not come up with that much money, she at first said the deal was off and then later suggested $100,000 as a down payment; and when she was told they didn't have that much money, she agreed to take $50,000 and stated that she had to have $50,000 to clear the title to the land subject to that contract. Mr. Kleinasser's testimony is corroborated by two other members of the colony, namely Reverend Zack Hofer and Mr. Joe Waldner.

Mrs. Scott concedes that varying amounts of money were talked of but not as down payments, and that originally the purchase price for the package was to have been at least $1,200,000.

The facts are that immediately upon receipt of the $50,000 as a down payment, mortgages on the land subject to the contract approximating that amount were paid off. This would seem to support the contention that the $50,000 payment was not an attempt to arrive at probable real damages from a breach, but instead was an amount requested by the seller to facilitate the closing of the deal.

Mrs. Scott testified that she and her husband went through their land piece by piece and came up with a figure between $1,100,000 and $1,200,000 as the value of the entire package, and that they communicated this figure to the Brethren. She contends that the suggested down payments were reasonable in light of the large amount of money involved.

That the $50,000 forfeiture clause was intended to discourage the Brethren from letting anything interfere with the closing of the earnest money contract is evident from Mrs. Scott's expressed concern as to whom the Scotts would turn to if, after the Scotts terminated their tenants' leases, the Brethren were to fail to pay the balance of that contract. Here she refers to the fact that the Brethren were unincorporated.

"This was a percentage of the total package price and we had to have enough money down so that the Hutterian Brethren would not willingly give it up because who are we to go to should trouble develop. I believe that most everyone understands that the Hutterian Brethren do not own individually property. The Sandlake Association was—I may stand corrected on this by the Brethren, but I never heard that it was incorporated. We were putting all tenants off the land, the entire package, turning it over, the total of this land over to the Hutterians."

From this aspect the $50,000 payment appears to be more in the nature of a penalty than liquidated damages.

In 1953 the California Supreme Court in analyzing cases referred to it in which the liquidation clauses had been held to be void as penalties said:

"The function of the agreed sum in each of those cases was to insure performance

by the obligor and was properly held to be a penalty." Better Food Markets v. American Dist. Tel. Co., 40 Cal.2d 179, 253 P.2d 10, 16.

It is our view that insurance of performance was the major objective in the instant case.

Other states, in determining whether a particular forfeiture provision of a contract is enforceable as liquidated damages or void as a penalty, examine the facts of the particular case to determine whether the amount to be forfeited is reasonable.

The Supreme Court of Kansas in a 1971 decision quoted from one of its earlier decisions as follows:

" 'In determining whether contractual agreements are to be treated as penalties or as liquidated damages, courts look behind the words used by the contracting parties to the facts and the nature of the transaction. The use of the terms "penalty" or "liquidated damages" in the instrument is of evidentiary value only. It is given weight and is ordinarily accepted as controlling unless the facts and circumstances impel a contrary holding. * * * The instrument must be considered as a whole, and the situation of the parties, the nature of the subject matter and the circumstances surrounding its execution taken into account. There are two considerations which are given special weight in support of a holding that a contractual provision is for liquidated damages rather than a penalty—the first is that the amount stipulated is conscionable, that it is reasonable in view of the value of the subject matter of the contract and of the probable or presumptive loss in case of breach; and the second is that the nature of the transaction is such that the amount of actual damage resulting from default would not be easily and readily determinable. * * *' (p. 726 [Beck v. Megli, 153 Kan. 721, 114 P.2d 305], 114 P.2d p. 308.)" White Lakes Shopping Center, Inc. v. Jefferson Stand-

ard Life Insurance Company, 208 Kan. 121, 490 P.2d 609, 613.

Applying the foregoing rule in *White Lakes* the Kansas Supreme Court found a $77,000 forfeiture in connection with a $3,850,000 written loan commitment agreement to be enforceable.

Pertinent is the statement of the general rule applied by the courts in cases contained in Corpus Juris Secundum. It should be noted that that source also discloses a tendency on the part of some courts to be more tolerant of provisions for liquidated damages, no longer holding to the view that provisions fixing damages for breach of agreements are to be construed as penalties in cases of doubt. 25 C.J.S. Damages § 102 at page 1037.

"As a general rule, where it is doubtful whether a provision should be deemed for a penalty or for liquidated damages, the courts incline to regard it as for a penalty, because the law favors mere indemnity, and by so doing the recovery can be apportioned to the actual damages or the loss actually sustained.

"On the other hand, there has been a tendency on the part of some courts to construe such contracts as stipulations for liquidated damages rather than as agreements for penalties; and in a number of jurisdictions the courts are now more tolerant of provisions for liquidated damages, and no longer hold to the view that provisions fixing damages for breach of agreements are to be construed as penalties in cases of doubt." 25 C.J.S. Damages § 102(b), pp. 1036, 1037.

It is our view, inasmuch as we are construing the statutes of another state, which statutes retain the provision making penalties imposed by contract for any nonperformance void, except for provisions which come within the exception permitting parties to agree upon an amount presumed to be the damages for breach in cases where it would be impracticable or ex-

tremely difficult to fix actual damages, that we should place the burden of proof in cases of doubt upon the party relying upon the stipulation.

It should be noted that $50,000 constitutes approximately 14½ per cent of the purchase price of the earnest money contract and 6¼ per cent of the $800,000 package deal. Inasmuch as the $800,000 package deal was not signed by the parties and only the earnest money contract calling for the payment of approximately $345,000 was signed by the parties, the $345,000 figure is the figure we should consider more relevant in determining whether the $50,000 figure constitutes a penalty. This we conclude, fully realizing that the Scotts sent notices terminating all leases, including leases to land covered by the package deal.

In a very recent Florida decision, the Supreme Court of that State concluded that a liquidated-damage clause should stand if the damages were not readily ascertainable at the time of the contract, permitting equity, however, "to relieve against the forfeiture if it appears unconscionable in light of the circumstances existing at the time of breach." Hutchison v. Tompkins, 259 So.2d 129, 132 (Fla.1972).

Under statutes similar to the South Dakota statutes, California places the burden of proving that a forfeiture clause is valid and enforceable upon the party relying upon the clause. See Electrical Products Corp. v. Williams, Cal.App., 256 P.2d 403 at pages 405, 406, 407.

In the most recently published decision of the South Dakota Supreme Court on this issue, that court found a forfeiture provision in a state highway construction contract which graduated the damages to be assessed daily in the event of breach, in proportion to the work to be performed, valid as a liquidated-damage clause. Dave Gustafson & Co. v. State, 83 S.D. 160, 156 N.W.2d 185, 189 (1968).

We believe that the contractual provisions in *Gustafson* distinguish it from the instant case. There may be circumstances involved in public contracts and other laws relating to public contracts that justify a more liberal treatment of forfeiture clauses in public contract cases. That issue we need not decide today.

■ We conclude that Mrs. Scott and the defendant corporation have failed to prove in this case that the forfeiture clause was not a penalty. They have failed to prove that the parties made a reasonable endeavor to fix fair compensation and that the $50,000 figure bears a reasonable relationship to the probable damages that would result from a breach. In so failing they have not established their case according to the guidelines laid down in *Cactus Heights*. As the guidelines were laid down by the highest court of our sister state construing their statutory law in recent years, we do not believe it is within our province to vary them or to shift the burden.

Accordingly, the judgment is reversed.

STRUTZ, C. J., and PAULSON and KNUDSON, JJ., concur.

TEIGEN, Judge (dissenting).

This appeal was taken on October 18, 1971, subsequent to the effective date of Rule 52(a) of the North Dakota Rules of Civil Procedure, as amended. This new rule provides that in an action tried to the court the trial court shall find the facts, which "findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

This case was tried to the court and, on appeal, is governed for review purposes by the above rule. Under this rule the findings of the trial court are presumptively correct and the burden is on the appellants to persuade this court that the findings of the trial court are "clearly erroneous." We have not heretofore construed this rule

in this state, however many federal cases in considering an identical federal rule (Rule 52(a), Federal Rules of Civil Procedure) have construed the identical federal provision.

It has been said that the term "clearly erroneous" is difficult of decision. However the United States Supreme Court in United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948), announced that what is meant by "clearly erroneous", under the federal rule, is as follows:

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

The appellate court is not to consider and weigh the evidence de novo. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 1576, 23 L.Ed. 2d 129 (1969).

The fact that the appellate court, on the same evidence, might have reached a different result does not justify it in setting aside the findings of fact. United States v. National Ass'n of Real Estate Bds., 339 U.S. 485, 70 S.Ct. 711, 717, 94 L.Ed. 1007 (1950). It may regard the finding as clearly erroneous only if the finding is without adequate evidentiary support or is induced by an erroneous view of the law. If the evidence will sustain a finding either way it is not "clearly erroneous", and thus it is not enough that the reviewing court might give the facts another construction or resolve the ambiguities another way. United States v. National Ass'n of Real Estate Bds., *supra*; United States v. Yellow Cab Co., 338 U.S. 338, 341, 70 S.Ct. 177, 94 L.Ed. 150 (1949).

The respondent is entitled to the benefit of all reasonable inferences and to have the evidence viewed in the light most favorable to him. Stacher v. United States, 258 F.2d 112 (9th Cir. 1958).

Considerable evidence was introduced by both parties. Based on the evidence introduced at the trial, the trial court found that the plaintiffs and the defendants negotiated and entered into a so-called "package deal" for the purchase and sale of a large quantity of land (about 4,400 acres). The "package deal" was divided into two contracts. One of such contracts was referred to as the "earnest money" contract, covering about 2,200 acres, and the balance of the land was represented by another contract. However, this latter contract was never signed because difficulties arose after the signing of the earnest money contract which was followed by a rescission by the plaintiffs. The trial court found that the sale was negotiated in this manner in order to provide the plaintiffs with a satisfactory arrangement for the financing and payment of the total purchase price of $800,000; that the earnest money contract took care of the down payment because, under the second contract, no payment was to become due until October 1, 1969, almost a year after the date of the earnest money contract; and that, during this time, the plaintiffs were to be in possession of and farm all of the land. The trial court found that this "package deal" arrangement was understood and agreed to by all of the parties concerned. The trial court also found:

"It is readily understandable that in an $800,000 land deal, the sellers would of necessity require an earnest money payment, and that such down payment be forfeited upon default by the purchaser. The defendant company was required to cancel all outstanding written leases in order to give possession of the lands to the plaintiffs as agreed. A default by the plaintiffs must cause damages and expenses to the defendant company for the making of new leases with new tenants. Uncertainties as to advantageous new leases were incapable and very difficult of accurate estimation. The parties herein, in the Court's opinion, made every reasonable endeavor to fix a fair

compensation under such uncertain and unpredictable future consequences. Further in the Court's opinion, the stipulated $50,000 bears a reasonable relation to probable damages, and is not disproportionate to any damages reasonably to be anticipated in a transaction of the size herein involved and no part of it can be recovered by plaintiffs on the theory that it was a penalty."

Based upon these findings, the trial court concluded that the defendants are not liable to the plaintiffs.

The majority found that the defendants, upon receipt of the $50,000 as a down payment, paid off mortgages on the land approximating that amount, and concluded:

"This would *seem* to support the contention that the $50,000 payment was not an attempt to arrive at probable real damages from a breach, but instead was an amount requested by the seller to facilitate the closing of the deal." [Emphasis added.]

I don't agree; it is immaterial what the money was used for. The question is: Does the amount agreed upon bear a reasonable relation to probable damages and is it, as a matter of law, disproportionate to any and all damages reasonably to be anticipated from a failure to perform.

From the following statement of the defendant:

"This was a percentage of the total package price and we had to have enough money down so that the Hutterian Brethren would not willingly give it up because who are we to go to should trouble develop. I believe that most everyone understands that the Hutterian Brethren do not own individually property. The Sandlake Association was—I may stand corrected on this by the Brethren, but I never heard that it was incorporated. We were putting all tenants off the land, the entire package, turning it over, the total of this land over to the Hutterians."

the majority found:

"From this aspect [the above testimony] the $50,000 payment *appears* to be more in the nature of a penalty than liquidated damages." [Emphasis added.]

The majority then conclude, contrary to the findings of the trial court, that the defendants have failed to prove that (1) "the parties made a reasonable endeavor to fix fair compensation" and (2) "the $50,000 figure bears a reasonable relationship to the probable damages that would result from a breach." Thus they decided that, under the guidelines laid down by the South Dakota Supreme Court, Mrs. Scott and the defendant corporation "had not established their case."

It appears to me that the majority have treated this review as one de novo and have found the facts anew and, by so doing, have not given the evidence the benefit of all reasonable inferences and have not reviewed the evidence in the light most favorable to the defendants, nor have they given any weight to the trial court's findings. The majority have given the facts another construction and resolved the ambiguities another way, which are contrary to the application of the federal rule by the federal courts, which rule we adopted as our rule with knowledge of the federal construction placed upon it.

In reviewing the evidence it is my conclusion that the finding of fact by the trial court that there was a package deal is not "clearly erroneous" but is well supported by the evidence. Mrs. Scott testified in relation to the amount that "this was a percentage of the total package price." It is also clear from the evidence that the second part of the package gave the plaintiffs possession and use of the lands described without requiring any down payment or prepayment of any kind.

In light of these facts the testimony of the defendant, Mrs. Scott, quoted by the majority, and other evidence in the case, were properly construed by the trial court

as the basis for a finding that there was a reasonable endeavor to fix a fair compensation under uncertain and unpredictable future consequences, which compensation would bear a reasonable relation to the probable damages. Further, there is no evidence to establish that the amount agreed upon is disproportionate to damages that might reasonably be anticipated in a transaction involving a package deal of this magnitude and, under South Dakota law, proof of actual loss or damages is immaterial and irrelevant. Dave Gustafson & Co. v. State, 83 S.D. 160, 156 N.W.2d 185 (1968).

It is my opinion that there is substantial evidence to sustain the judgment of the trial court, and that the record will not sustain a holding that the findings of the trial court are "clearly erroneous." This, I think, is particularly true in view of the light in which the South Dakota Supreme Court approved Dave Gustafson & Co. v. State, *supra,* when it quoted with approval a statement from Vol. 5, Williston on Contracts, 3rd Ed., § 785, at 733, as follows:

> " 'Accordingly, unless the sum fixed in the contract is very unreasonable the provision is treated as one for liquidated damages.' "

The South Dakota Supreme Court then concluded:

> "For the same reasons we must conclude the amount stipulated in the contract bears a reasonable relation to probable damages and is not, as a matter of law, disproportionate to any and all damage reasonably to be anticipated from the unexcused delay in performance."

The South Dakota Supreme Court in *Gustafson* said that Anderson v. Cactus Heights Country Club, 80 S.D. 417, 125 N.W.2d 491 (1963), reflects the modern tendency not to "look with disfavor upon 'liquidated damages' provisions in contracts. When they are fair and reasonable attempts to fix just compensation for anticipated loss caused by breach of contract,

they are enforced * * *" and it is only when the sum fixed in the contract is very unreasonable that the provisions will be treated as a penalty.

In light of these cases showing the direction which the South Dakota Supreme Court has taken on this question, it is my opinion that this court should affirm the district court as there is adequate evidentiary support in the record to sustain the trial court's findings, and it took the correct view of the South Dakota law.