**In re DIRECT TRANSIT, INC., an Iowa Corporation, Debtor.**

**DIRECT TRANSIT, INC., an Iowa Corporation, Appellant,**

v.

**SOUTH DAKOTA GOVERNOR'S OFFICE OF ECONOMIC DEVELOPMENT, Appellee.**

BAP No. 98–6039NI.

United States Bankruptcy Appellate Panel for the Eighth Circuit.

Submitted Sept. 1, 1998.

Decided Oct. 26, 1998.

John R. Weiss, Chicago, IL, for Appellant.

Roger Wilgers Damgaard, Sioux Falls, SD, for Appellee.

Before KOGER, Chief Judge, SCHERMER and MIXON,[1] Bankruptcy Judges.

JAMES G. MIXON, Chief Judge.

The Debtor, Direct Transit, Inc. ("Direct Transit"), appeals an order of the bankruptcy court[2] allowing the inclusion of liquidated damage in the calculation of a secured claim filed by the South Dakota Governor's Office of Economic Development ("GOED"). We affirm.

I

*BACKGROUND*

The parties do not dispute the facts in this case, which they submitted to the bankruptcy court by stipulation. The State of South Dakota has established an incentive program to stimulate economic development in the state referred to as the "Revolving Economic Development and Initiative Fund" (REDI). GOED administers the fund, the mission of which is to invest taxpayer dollars to create new primary jobs and quality job opportunities for South Dakotans through low interest loans to qualified applicants. Between 1989 and 1996 more than 10,000 primary jobs were created with the use of REDI funds.

GOED lent REDI funds to Direct Transit under two loan packages. Loan Package # 91–05–A in 1992 was for the sum of $200,000.00 at 3% interest, and Loan Package # 94–21–A in 1995 was for the sum of $500,000.00 at 2% interest. A promissory note memorialized each loan. To secure the two loans, GOED took a mortgage on Direct Transit's new headquarters, a security interest in the personal property located there, and a $450,000.00 demand letter of credit. The mortgage and security interests were properly perfected.

In addition to the loan packages, the parties entered into separate employment agreements. These agreements specified, among other things, that the applicant must maintain its business operation in South Dakota for eight years from the date of the agreement without the loss to South Dakota of "the employment created by the project." (App. to Appellant's Brief at 26, 37.) Although the employment agreements were binding for a term of eight years, the promissory notes were amortized over a shorter, five-year period in equal monthly installments.

Each employment agreement contained a provision that if the borrower ceased operation within eight years from the date of the agreement, the borrower agreed to pay liquidated damages. The agreement fixed liquidated damages as the difference between the interest rate in the note and an interest rate that the parties agreed was the current commercial rate, 10% in 1992 and 8% in 1995.

1. The Honorable James G. Mixon, Chief Judge, United States Bankruptcy Court for the Eastern and Western Districts of Arkansas, sitting by designation.

2. The Honorable William L. Edmonds, Chief Judge, United States Bankruptcy Court for the Northern District of Iowa.

This increased interest rate was to be applied not only prospectively against all outstanding balances at the time of the breach, but also retroactively, to all outstanding principal since the inception of the loan.

Competent legal counsel represented both Direct Transit and GOED at the time the employment agreements were signed. The parties negotiated extensively regarding the terms of the agreements, and the officers who signed the agreements on behalf of Direct Transit are experienced businessmen.

Direct Transit filed for relief under the provisions of chapter 11 of the Bankruptcy Code on October 21, 1996. The parties have stipulated that Direct Transit breached the employment agreement on April 8, 1997. GOED's claim is fully secured, including that disputed portion of the claim for liquidated damages. Unsecured creditors in this case will receive less than a 100% dividend. A distribution to equity security holders is unlikely.

The amount of liquidated damages, measured by the difference in the contract rate of interest and the market rate of interest, is $104,851.00. GOED's secured claim, if all liquidated damages are allowed, is calculated as follows:

| | |
|---|---|
| Principal | $171,909.97 |
| Interest through 2/15/98 | $ 15,032.80 |
| Liquidated Employment Damage | $104,851.00 |
| TOTAL: | $291,793.77 |
| Per Diem on Principal Balance only on and after February 15, 1998 | $ 54.16 |

## II.

### BANKRUPTCY APPELLATE PANEL JURISDICTION

Direct Transit filed a timely notice of appeal, and neither party elected to submit the appeal to the District Court. Therefore, this panel has jurisdiction pursuant to 28 U.S.C. § 158(a)(1); 28 U.S.C. § 158(b)(6); and 28 U.S.C. § 158(c).

## III.

### ISSUE AND STANDARD OF REVIEW

■ The issue is whether the liquidated damage provision of the employment agreements is enforceable under South Dakota law

and properly included in the secured claim of GOED pursuant to 11 U.S.C. § 506(b). Because the issue is a question of law, we review the bankruptcy court's ruling *de novo*. *First Nat'l Bank of Olathe v. Pontow*, 111 F.3d 604, 609 (8th Cir.1997); *Van Der Heide v. La Barge (In re Van Der Heide)*, 219 B.R. 830, 833 (8th Cir. BAP 1998).

## IV.

### ARGUMENTS

As a basis for reversal Direct Transit argues two points. The first argument is that, despite its characterization as liquidated damages, the disputed portion of the claim results from a default interest rate retroactively applied and is, therefore, not allowable. The second argument is that even if the claim includes liquidated damages rather than default interest, it is unenforceable under South Dakota law because the amount of liquidated damages is "vastly disproportionate to the injury [from the breach and, thus,] unreasonable and unenforceable." (Appellant's Brief at 5.)

## V.

### DISCUSSION

The Bankruptcy Code provides that an over-secured creditor may claim principal and interest due on the date the petition is filed, as well as post-petition interest and "any reasonable fees, costs or charges provided for under the agreement under which such claim arose." 11 U.S.C. § 506(b) (1994). The parties stipulated that Direct Transit is over-secured to the full extent of the amount of the claim, including the disputed charge for liquidated damages, and that if the liquidated damages claim is allowable, it is a properly perfected secured claim.

We hold that the term of the employment contract in question is a true liquidated damages provision, that it is enforceable under South Dakota law, and that it is a reasonable charge and properly allowable as part of GOED'S secured claim pursuant to 11 U.S.C. § 506(b).

## A. THE TERM IN THE EMPLOYMENT AGREEMENT IS A TRUE LIQUIDATED DAMAGES PROVISION

Direct Transit first argues that the liquidated damage provision in each employment agreement is a default rate of interest that is unenforceable because such interest cannot be retroactively applied. In determining whether to enforce default interest terms, some courts view such increases as a species of liquidated damages rather than distinguishing between the two. *See, e.g., In re Timberline Property Dev., Inc.,* 136 B.R. 382, 385–86 (Bankr.D.N.J.1992) (examining a default interest rate under an analysis for liquidated damages); *Foss v. Boardwalk Partners (In re Boardwalk Partners),* 171 B.R. 87, 92 (Bankr.D.Ariz.1994) (noting that if a default interest provision were too high, the court could strike it down as an impermissible liquidated damages provision).

■ Although default interest and liquidated damages are similar in concept, the differences between the two are readily discernible, especially when applied to the facts in this case. When the term "default interest" is used, "default" refers to an event in a debtor-creditor relationship that triggers certain consequences typically set out in a loan document. *Citybank v. Udhus (In re Udhus),* 218 B.R. 513, 515 (9th Cir. BAP 1998) (citing *In re Entz–White Lumber & Supply, Inc.,* 850 F.2d 1338 (9th Cir.1988)). One such consequence may be the escalation of the interest rate on remaining indebtedness, hence the term "default interest." *See, e.g., Fischer Enter., Inc. v. Geremia (In re Kalian),* 178 B.R. 308 (Bankr.D.R.I.1995) (note's pre-default rate was 18%; default rate was 36%); *Connecticut Gen. Life Ins. Co. v. Schaumburg Hotel Owner Ltd. Partnership (In re Schaumburg Hotel Owner Ltd. Partnership),* 97 B.R. 943 (Bankr. N.D.Ill.1989) (note's contract rate was 14.7%; default rate was 19%); *In re W.S.Sheppley & Co.,* 62 B.R. 271 (Bankr.N.D.Iowa 1986) (note's predefault rate was 9.27%; default rate was 12%). In contrast, "liquidated damage" usually refers to a specific sum of money expressly stipulated as the amount of damages to be recovered for breach by either party to an agreement. *Stein v. Bruce,* 366 S.W.2d 732, 735 (Mo.App.1963).

■ Here, the calculation for liquidated damages is located in each Agreement Relating to Employment but not in the promissory notes or other loan documents where provisions for default interest rates typically are found. The disputed increase in interest is labeled "liquidated damages," and the parties expressly agreed that Direct Transit would pay GOED a specific sum in the event of breach of the Loan Authorization. Under this agreement, the specified liquidated damages are only due if Direct Transit changed the nature of the project, relocated, or ceased operations so that a loss of employment resulted. Other than the contract rates of interest of 3% and 2%, the only interest rate referred to by the two promissory notes is interest on past-due payments. Direct Transit could have been in default under the terms of the notes without being liable for liquidated damages if Direct Transit continued to operate consistent with the Agreements Related to Employment.

The liquidated damages provision became due for a non-monetary breach of the contract rather than for a default under the terms of the note. Therefore, the provision in question is a true liquidated damages provision and not a default rate of interest.

## B. THE LIQUIDATED DAMAGE PROVISION IS ENFORCEABLE UNDER STATE LAW AND THE BANKRUPTCY CODE

■ The analysis as to the allowance of liquidated damages begins with section 506(b). That provision allows for a claim to include additional charges if the claim is over-secured, the charge is provided for under the agreement under which the claim arose, and the charge is reasonable. 11 U.S.C. 506(b) (1994). Additionally, the charge must be enforceable under state law. *Mack Fin. Corp. v. Ireson,* 789 F.2d 1083, 1084 (4th Cir.1986) (considering the allowance of a late charge); *Ferrari v. Barclays American/Bus. Credit, Inc., (In re Morse Tool, Inc.),* 87 B.R. 745, 748 (Bankr.D.Mass. 1988) (considering early termination charges).

The parties having stipulated that the claim is over-secured and the charge for liquidated damages is provided for in the employment agreements, the inquiry is whether the claim is enforceable under state law and reasonable under the Bankruptcy Code. South Dakota law provides:

> Any contract in which the amount of damages or compensation for breach of an obligation is determined in anticipation thereof is void to that extent except the parties may agree therein upon an amount presumed to be the damages for breach in cases where it would be impracticable or extremely difficult to fix actual damage.

S.D. Codified Laws § 53–9–5 (Michie 1998).

■ Like the laws of many other jurisdictions, South Dakota law sustains a provision for liquidated damages if (1) at the time the contract was made the damages in the event of breach were incapable or very difficult of accurate estimation; (2) there was a reasonable endeavor by the parties to fix fair compensation; and (3) the amount stipulated bears a reasonable relation to probable damages and not disproportionate to any damages reasonably to be anticipated. *Safari, Inc. v. Verdoorn*, 446 N.W.2d 44, 46 (S.D. 1989) (citations omitted); *Prentice v. Classen*, 355 N.W.2d 352, 355 (S.D.1984); *Walter Motor Truck Co. v. State*, 292 N.W.2d 321, 323 (S.D.1980) (citation omitted); *Dave Gustafson & Co. v. State*, 83 S.D. 160, 156 N.W.2d 185, 187 (S.D.1968); *Anderson v. Cactus Heights Country Club*, 80 S.D. 417, 125 N.W.2d 491, 493 (S.D.1963) (citations omitted). See, also, *City of Fargo v. Case Dev. Co.*, 401 N.W.2d 529, 531 (N.D.1987) (citations omitted); *Hofer v. W.M. Scott Livestock Co.*, 201 N.W.2d 410, 413 (N.D. 1972) (citations omitted); Restatement (Second) of Contracts § 339 (1981); 3 Samuel Williston & Richard A. Lord, a Treatise on the Law of Contracts § 7:37 (4th ed.1992).

South Dakota decisions mirror the modern trend to enforce reasonable liquidated damage provisions in contracts. *Prentice v. Classen*, 355 N.W.2d 352, 355 (S.D.1984); *Dave Gustafson & Co.*, 156 N.W.2d at 188. As the South Dakota Supreme Court has stated, whether a provision for liquidated damages is enforceable turns on "the reasonableness or unreasonableness of the stipulation." *Dave Gustafson & Co.*, 156 N.W.2d at 187.

If the purpose of liquidated damages is to ensure performance of the contract with an *in terrorem* provision, then liquidated damages may well be construed as an unenforceable penalty. *Hofer*, 201 N.W.2d at 414 (quoting *Better Food Markets v. American Dist. Tel. Co.*, 40 Cal.2d 179, 253 P.2d 10, 16 (Cal.1953)). One consideration given special weight is whether the amount stipulated "is conscionable, that it is reasonable in view of the value of the subject matter of the contract and of the probable or presumptive loss in case of breach. . . ." *Hofer*, 201 N.W.2d at 410 (quoting *White Lakes Shopping Ctr. Inc. v. Jefferson Standard Life Ins. Co.*, 208 Kan. 121, 490 P.2d 609, 613 (Kan.1971); *Beck v. Megli*, 153 Kan. 721, 114 P.2d 305, 308 (Kan. 1941)). Liquidated damage provisions are not against public policy "as an appropriate means . . . of providing compensation, in case of failure to perform." *Walter Motor Truck Co.*, 292 N.W.2d at 323.

Liquidated damage provisions are particularly useful in public contracts when damages are uncertain or unmeasurable. *City of Fargo*, 401 N.W.2d at 531–32; *Walter Motor Truck Co.*, 292 N.W.2d at 323; *Dave Gustafson & Co.*, 156 N.W.2d at 188 (citations omitted). This principle was enunciated by the Supreme Court of North Dakota, "[I]t is the public as a whole that suffers when such a contract is breached. . . . Although the damages suffered by the governmental body itself may be readily ascertainable, the damages sustained by the public are not readily ascertainable, and, on such basis, liquidated damage provisions are generally upheld. . . ." *Bowbells Pub. Sch. Dist. No. 14 v. Walker*, 231 N.W.2d 173, 176 (N.D.1975) (citations omitted).

■ The bankruptcy court correctly applied the law to the facts in this case and was correct in declining to rewrite the contract the parties negotiated. First, the damages in the event of Direct Transit's breach were incapable of accurate estimation. Direct Transit does not directly dispute this point. Incalculable damages were sustained by the

South Dakota public in the form of loss of employment opportunities and potential for economic improvement. Similarly, the State of South Dakota suffered damages in the form of lost tax revenues in an amount impossible to estimate at the time of the parties' agreement. *City of Fargo,* 401 N.W.2d at 532.

Second, the parties made a reasonable effort to fix fair compensation, a conclusion well established by the record. The parties stipulated that the employment contracts were the products of extensive negotiations by experienced businessmen represented by competent legal counsel.

Third, the amount stipulated bears a reasonable relation to probable damages and is not disproportionate to any damage reasonably to be anticipated. The benefit of the bargain received by Direct Transit was a loan at a rate of interest below market rates. Direct Transit argues that the liquidated damage provision does not credit Direct Transit with having provided bargained-for consideration to GOED for a portion of the eight-year terms. Direct Transit emphasizes that the longer it performed, the greater the liquidated damage amount when the company ceased to perform under the agreements. Thus, Direct Transit argues that the liquidated damage provision bears no reasonable relation to the actual damage to be anticipated.

This argument focuses on only one aspect of the complete picture. The parties stipulated that the market rate of interest provision was "compensation for the loss of income the loan funds could be making in the commercial investment market." (App. to Appellant's Brief at 48.) The longer Direct Transit had use of the loan proceeds at a below-market rate of interest, the greater the detriment to GOED, and the greater the benefit to Direct Transit. As previously stated, the damages for breach of the employment contracts were impossible to calculate; therefore, the parties agreed that the damages would equal the actual time value of the borrowed money. This stipulated amount is not unconscionable in view of the value of the subject matter of the contract and GOED's loss because of the breach. *Hofer v. W.M.*

*Scott Livestock Co.,* 201 N.W.2d 410, 415 (N.D.1972).

Direct Transit's argument seems to be that the stipulated sum should not be enforced because the parties did not more accurately estimate actual damages. In support of this contention, Direct Transit asserted in oral argument that the liquidated damage amount was probably lower than the actual damages suffered. Thus, because the parties did not initially agree to a greater amount, the liquidated damages are disproportionately low and the liquidated damages provision fails the third prong of the test.

However, as is typical in public contracts where the public as a whole will suffer from a breach, the parties in this case could not, at the time of the agreements, and cannot now quantify the resulting damages. The parties therefore attempted to accomplish the purpose of any reasonable liquidated damages provision: "[T]o avoid the waste of controversy as to the extent of a loss, should it occur, and to save judges and jurors from having to guess about it...." *Priebe & Sons, Inc. v. United States,* 332 U.S. 407, 417, 68 S.Ct. 123, 92 L.Ed. 32 (1947) (Frankfurter, J., dissenting).

■ The fact that a charge is enforceable under state law is at least indicative of its reasonableness under the Bankruptcy Code. *See, e.g., Mack Fin. Corp. v. Ireson,* 789 F.2d 1083, 1084 (4th Cir.1986) (affirming the district court's finding that late charge was reasonable because it comported with limits set by state law). However, some courts have further interpreted the Bankruptcy Code's reasonable standard as meaning "actual and necessary." *In re Outdoor Sports Headquarters, Inc.,* 161 B.R. 414, 424 (Bankr.S.D.Ohio 1993) (citing *Imperial Coronado Partners, Ltd. v. Home Fed. Savs. & Loan Ass'n (In re Imperial Coronado Partners, Ltd.),* 96 B.R. 997, 1001 (9th Cir. BAP 1989); *In re Duralite Truck Body & Container Corp.,* 153 B.R. 708, 714 (Bankr.D.Md. 1993)); *Ferrari v. Barclays American/Bus. Credit Inc.,* 87 B.R. 745, 750 (Bankr.D.Mass. 1988) (citing *In re American Metals Corp.,* 31 B.R. 229, 237 (Bankr.D.Kan.1983); *In re Lane Poultry of Carolina, Inc.,* 63 B.R. 745, 749 (Bankr.M.D.N.C.1986); *In re Banks,* 31

B.R. 173, 178 (Bankr.N.D.Ala.1982)). There-
fore, a liquidated damages charge is reason-
able under § 506(b) to the extent that the
secured party actually incurred damages.
*Ferrari,* 87 B.R. at 750; *In re American
Metals Corp.,* 31 B.R. 229, 237 (Bankr.D.Kan.
1983).

■ Although the damages in this case are
impossible to quantify, the evidence ade-
quately demonstrates that damages occurred
as a result of the breach of contract, and the
stipulated damages provide GOED at least
some measure of recovery because GOED
did not receive the benefit of its bargain:
jobs for South Dakotans for eight years in
exchange for a low interest loan. Therefore,
the charges are reasonable within the mean-
ing of section 506(b). Under the facts in this
case, the Bankruptcy Court was correct in
declining to rewrite the contract the parties
negotiated.

## VI.

### *CONCLUSION*

Therefore, for the reasons stated the judg-
ment of the bankruptcy court is affirmed.