[Civ. No. 55623. Second Dist., Div. Four. Feb. 1, 1980.]

JOSEPH BARBERA, Plaintiff, Cross-defendant and Respondent, v.
ERWIN H. SOKOL et al., Defendants, Cross-complainants and Appellants.

**COUNSEL**

Edward J. Horowitz for Defendants, Cross-complainants and Appellants.

Acret & Perrochet and Byron D. Berg for Plaintiff, Cross-defendant and Respondent.

**OPINION**

**JEFFERSON (Bernard), J.**—This is an action by a masonry subcontractor against an owner-builder and general contractor for damages and attorney fees flowing from a breach of a written construction contract. By second amended complaint, plaintiff masonry subcontractor Joseph Barbera, doing business as A. M. Barbera & Son, also alleged causes of action on theories of an open book account and quantum meruit. Plaintiff also sought, as additional relief, foreclosure of a mechanic's lien and recovery on a bond. Named as defendants were Erwin H. Sokol, individually and doing business as E. H. Sokol Construction Company, Arthur and Frances Sokol, Continental Auxiliary Company, a California corporation, and Bank of America National Trust & Savings Association. As a fifth cause of action, plaintiff sought recovery on performance bonds executed by defendant Houston General Insurance Company.[1]

The defendants answered the second amended complaint, denying liability. Defendants Erwin H. Sokol, individually and doing business as E. H. Sokol Construction Company, and Arthur and Frances Sokol filed a cross-complaint against plaintiff for damages for breach of the

---

[1]This defendant appeared at trial but did not participate therein to any extent. At the close of trial, the complaint was dismissed as to Houston General Insurance.

same construction contract by plaintiff and for damages on a performance bond against cross-defendant Financial Indemnity Company, a California corporation. It was further alleged in the cross-complaint that the construction contract contained a liquidated damages clause obligating plaintiff to pay $400 per day for delays in contractual performance, and that plaintiff cross-defendant was liable for breach of this clause of the contract.

Trial was by the court, sitting without a jury. Judgment was awarded to plaintiff on the second amended complaint and also to plaintiff and Financial Indemnity Company as cross-defendants with respect to the cross-complaint. Plaintiff was awarded damages in the sum of $21,270.86, together with interest and costs, and attorney fees of $5,000, recoverable from defendants Erwin H. Sokol, individually, and doing business as E. H. Sokol Construction Company, and Arthur and Frances Sokol. Plaintiff's relief also included a mechanic's lien against the subject real property, located at 1697 Pacific Avenue in Venice.

Defendants have appealed from the judgment. Plaintiff filed a cross-appeal from that portion of the judgment awarding attorney fees of $5,000.[2]

In essence, defendants make one claim on this appeal—that the trial court, after hearing the evidence, should have ruled that the liquidated damages clause contained in the construction contract was valid *as a matter of law,* and that its failure to do so requires a remand of the case for the trial court to compute the amount of liquidated damages defendants are entitled to recover from plaintiff on the cross-complaint.

I

*The Procedural History and Factual Summary*

We summarize the evidence adduced below, bearing in mind that "[i]n resolving the issue of the sufficiency of the evidence, we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment [citation]. All issues of credibility are likewise

---

[2]During the pendency of the appeals, plaintiff filed a written request that the cross-appeal be dismissed. Pursuant to this request, an order has been filed dismissing the cross-appeal.

within the province of the trier of fact." (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].)

In September 1972, defendant Erwin H. Sokol was an experienced general contractor who was planning to build a 92-unit apartment house, hotel and related facilities in Venice, California, to be owned by Sokol and members of his family. The building was to be 300 feet long, about 65 feet wide, and 3 stories high, and was to be located over a semisubterranean garage.

Plaintiff Joseph Barbera, an experienced masonry subcontractor, made a bid of $85,000 for the masonry work. Sokol rejected the bid, stating it was too high. The parties discussed the project again in early 1973, and Barbera told Sokol that the easiest way to perform the masonry and carpentry work on the building was for the two trades to work together in rotation, each completing a half floor at a time. In March 1973, Sokol asked Barbera to submit another bid for the masonry work. Barbera did so and the parties reached a tentative agreement. Sokol and Barbera met on April 1. According to Barbera, there was no discussion at that time of how many working days Barbera would require to complete his part of the work. Barbera testified that he went to the job site on May 29, 1973, but noted that the site was not yet ready for his masonry crew because of some improper work done by the concrete subcontractor, the previous subcontractor on the job. Barbera had been told by Sokol of the difficulties the latter as owner builder had been having as the result of delays and damage caused by previous subcontractors.

On June 5, 1973, Barbera met with Sokol to discuss the contract, which was executed by both parties on that date and provided for a contract price of $83,600 for the masonry work. The contract, prepared by Sokol, was in part a standardized and printed building contract. Included therein, in typewriting, was a section 6, entitled "Special Provisions" and which provided, in pertinent part, that "Subcontractor hereby agrees to commence construction of the project at once upon notice from the Owner, and at all times, have a crew of men large enough to keep up with the other trades, and not in any way cause to slow down, slow down the completion of the project. If for any reason there is a delay in the completion of the project caused by the masonry subcontractor, then in that event, the foregoing $400.00 per day sum represents the amount of liquidated damages which the parties hereto

have agreed upon as compensation to the contractor, owners, for any delay in the completion of construction pursuant to this subcontract in excess of said 14 day period, and the parties acknowledge that said sum represents a fair and equitable amount of compensation of such delay in view of the impossibility of ascertaining actual damages."

It is significant that the figure "14" contained in section 6, was not typed but was written into a blank space by hand. The parties read and discussed the contract on this occasion; there was agreement concerning certain deletions and an addendum was written out at the end of the contract in Sokol's handwriting that "Masonry contractor agrees to order all materials within two days after the execution of this Contract." The parties discussed the "time is of the essence" provision, and the amount of time Barbera would need to complete his work. Here there was a conflict in the evidence. Barbera testified that he told Sokol he would need 14 days (or 2 weeks) approximately to do each floor of the building; Sokol testified that Barbera had told him it would take 14 days to do the 3 floors. Barbera testified that, at the time he executed the contract, the number 14 had not been inserted, and that the first time he learned of the "14 day" provision was late in August 1973. Sokol testified that he and Barbera had discussed the $400 per day liquidated damages clause prior to the contract's execution; but Barbera denied having such a discussion with Sokol with respect to any aspect of the liquidated damages clause.

Barbera's crew began work on July 10, 1973. The crew took 54 working days to erect the building. The crew finished on October 9, 1973, although other items of work and cleanup took several more months. Barbera testified that his crew was unable to work between July 31 and August 15 in 1973 because they were delayed by the carpenter. Barbera estimated that the 54 working days he required to complete the contract included 10 days of delay caused by defendant owner and other contractors. This evidence was controverted by defendant. In addition, defendant Sokol testified that on many occasions during the progress of the masonry work, he complained to Barbera that there were not enough men in Barbera's crew; Barbera denied that this was true.

Of the total contract price, defendants paid plaintiff $64,782.75 but failed to pay the remainder due. This action and the cross-complaint followed.

## II

### *The Trial Court's Findings and Conclusions*

In paragraph 9 of its findings of fact, the trial court set forth that: "Defendants and cross-complainants Erwin H. Sokol, individually and doing business as E. H. Sokol Construction Company, Arthur Sokol, and Frances Sokol did not sustain the burden of establishing the foundational facts required by Civil Code § 1671 to enable said defendants/cross-complainants to be entitled to liquidated damages against plaintiff nor did said defendants/cross-complainants present any credible evidence in support of actual damages. Plaintiff and cross-defendant Joseph Barbera doing business as A. M. Barbera & Son did not breach its contract with said defendants and cross-complainants. [¶] By reason therefore, said defendants and cross-complainants' cross-complaint against Joseph Barbera doing business as A. M. Barbera & Son and cross-defendant Financial Indemnity Company fails and judgment on said defendants and cross-complainants' cross-complaint is to be entered in favor of cross-defendant Joseph Barbera doing business as A. M. Barbera & Son and Financial Indemnity Company."

In accordance with paragraph 9 of the findings and a corresponding conclusion of law, the trial court denied defendants any recovery on their cross-complaint against plaintiff for liquidated damages under the liquidated-damages provision of the contract.

## III

### *A Liquidated-Damages Clause in a Contract as a Rebuttable Presumption Affecting the Burden of Producing Evidence*

At the time these parties entered into the contract in question, a liquidated-damages provision in a contract was governed by Civil Code section 1671, which provided: "The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."[3]

---

[3]Effective July 1, 1978, Civil Code section 1671 was amended to provide for a different standard to be applied to a liquidated damages clause. The amended section

Prior to the advent of the Evidence Code in 1967, the decisional law which concerned itself with Civil Code section 1671 was not required to consider whether this section created a rebuttable presumption. Thus, in *Greenbach Bros., Inc.* v. *Burns* (1966) 245 Cal.App.2d 767, 771 [54 Cal.Rptr. 143], it was stated that "the validity of a provision for liquidated damages will depend in each case upon the sufficiency of the evidence to bring the case within the exception of section 1671."

■ But after the advent of the Evidence Code, it was clear that Civil Code section 1671 created a rebuttable presumption that affected the burden of producing evidence. (See Evid. Code, § 603.) As a rebuttable presumption, the liquidated-damages clause in a contract must be considered in light of the procedural functioning of a rebuttable presumption which imposes upon the party utilizing the presumption the burden of introducing evidence and proving the existence of the foundational facts of the presumption. This becomes necessary in order for such party to obtain the benefit of the *presumed fact* which flows from the existence of the foundational facts. (See Jefferson, Cal. Evidence Benchbook (1972) § 46.3, pp. 801-809.)

In the recent case of *United Sav. & Loan Assn.* v. *Reeder Dev. Corp.* (1976) 57 Cal.App.3d 282, 298-299 [129 Cal.Rptr. 113], the court analyzed the liquidated-damages-clause presumption and spelled out the foundational facts required to trigger the presumption established by Civil Code section 1671. The court made this pertinent observation: "We conclude that the *foundational facts* of the Civil Code section 1671 presumption are the following: (1) an agreement by the parties fixing an amount to be considered as liquidated damages for a breach of the contract; (2) that it would be impracticable or extremely difficult to fix the amount of actual damages; and (3) that the amount stated as liquidated damages is the result of a reasonable endeavor by the parties to state an amount that bears a reasonable relationship to actual dam-

---

declares, in subdivision (b), that "a provision in a contract liquidating the damages for the breach of the contract is valid *unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made.*" (Stats. 1977, ch. 198, § 5, p. 718.) (Italics added.) We are not called upon in this case before us to interpret the legal effect of the change in the provisions of Civil Code section 1671.

It is to be noted however, that subdivision (d) of section 1671, as amended, provides that certain types of consumer contracts, described in subdivision (c), and which contain liquidated damages clauses, are still to be governed by the standard set forth in Civil Code section 1671 before the 1978 amendment. (See Civ. Code, § 1671, subd. (d).)

ages." (Italics in original.) From proof of these foundational facts the *"presumed fact* of the presumption is that the amount set forth as liquidated damages constitutes the *actual loss or damage* sustained by breach of the contract." (*Id.* at p. 299.) (Italics in original.)

In light of the foundational facts required to bring into play the presumed fact of the Civil Code section 1671 presumption, we briefly consider how this presumption operates. Thus, "[t]he proponent of the presumption has the burden of proving, by a preponderance of the evidence, the foundational facts of the presumption. As in the case of all presumptions, the opponent may introduce evidence tending to establish the nonexistence of the foundational facts, or the presumed fact, or both. Evidence to rebut the existence of the foundational facts might be evidence that the amount stated in the contract was not determined as a result of any reasonable endeavor by both parties to the contract to arrive at an amount that bore a reasonable relationship to actual damages, or that it was neither impracticable nor extremely difficult to determine actual damages. [¶] If the opponent of the presumption offers evidence that the parties did not really agree upon the amount set forth as liquidated damages through any mutual endeavor, or evidence that it was neither impracticable nor extremely difficult to determine actual damages, the attack is *not* upon the existence of the presumed fact, but upon the existence of the foundational facts of the presumption. Hence, the trier of fact in this situation is required to determine only whether the proponent of the presumption has established, by a preponderance of the evidence, the existence of the foundational facts. If so, the trier of fact *must* find that the presumed fact exists." (*Id.* at p. 300.) (Italics in original.)

In the instant case, the trial court found that the evidence was insufficient to establish the three foundational facts of the presumption. ■ Defendants' argument concerning insufficiency of the evidence is to the effect that the evidence clearly established that the construction contract—including both the printed and typewritten sections thereof—was executed by two experienced parties who were familiar with liquidated damages provisions, and that, as a consequence, the three foundational facts set forth in *Reeder* had been satisfied as a matter of law. In support of this argument, defendants rely on such cases as *Better Food Mkts.* v. *Amer. Dist. Teleg. Co.* (1953) 40 Cal.2d 179 [253 P.2d 10, 42 A.L.R.2d 580] and *Feary* v. *Aaron Burglar Alarm, Inc.* (1973) 32 Cal.App.3d 553 [108 Cal.Rptr. 242], wherein

liquidated damages clauses were found valid in the context of the evidence adduced in the trial court. Both cases recognize that the establishment of foundational facts is ordinarily based upon fact-finding but may, *under particular circumstances,* be determined as a matter of law.

But these cases do not establish new law. It is possible that *any* facts —foundational facts of a presumption or facts necessary for a litigant's rights otherwise—may be established as a matter of law. But the matter-of-law principle can have effect only if the evidence of a fact is undisputed and permits of no conflicting reasonable inferences.

In the instant case, there was conflict in the evidence concerning the liquidated damages clause. Thus, Barbera testified that his time estimate, given to Sokol, was 14 days per floor, rather than 14 days for 3 floors; that Sokol inserted the figure "14" in the contract after Barbera signed the document. It is clear that Barbera's version of events seemed more reasonable to the trial court in view of the size of the project and the circumstance that Sokol did not invoke the clause or even mention it to Barbera until long after the expiration of 14 days. Thus, the trial court found the evidence to be insufficient to establish the foundational fact of *agreement.*

And, in contrast to the burglar alarm cases (*Better Foods* and *Feary, supra*) where it can truly be said that the damages resulting from a breach of an agreement securing a business establishment against crime would be difficult to ascertain, the damages which flow from the ordinary construction contract involve elements common to the damages found in the breach of any financial agreement. Since Sokol did not keep a record of the progress of the project involved in the case at bench, there was little evidence of damages specifically attributable to any purported delay by Barbera.

Finally, as *Reeder* makes clear, the evidence required to support the foundational-facts determination that the parties, at the time of contracting, made a reasonable endeavor to arrive at a liquidated damages figure which bears a reasonable relationship to actual damages, necessarily requires proof that *both* parties participated in the process—not simply one of the parties. Here, again, the evidence was in conflict. Sokol testified that the clause was discussed while Barbera denied there had been any discussion. The trial court could thus reasonably have found that the joint endeavor requirement had not been satisfied.

■ Since defendant Sokol was relying on the liquidated damages clause, he clearly had the burden of establishing, by a preponderance of the evidence, the foundational facts which were requisite to invocation of the liquidated damages clause presumption. (*Garrett* v. *Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731, 738 [108 Cal.Rptr. 845, 511 P.2d 1197, 63 A.L.R.3d 39].)

■ We conclude that the evidence in this record was in conflict rather than undisputed and arrived at through admissions or stipulations. In the face of conflicting evidence, the trier of fact could reasonably find that defendants did not carry their burden of proof, and could not, therefore, invoke the liquidated damages clause to obtain recovery on their cross-complaint.

The judgment is affirmed. Upon appropriate application within 30 days from the date of filing of the remittitur, the trial court is directed to award respondent reasonable attorney's fees for services rendered on this appeal.

Kingsley, Acting P. J., and Rogan, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.