[No. B179348. Second Dist., Div. Eight. Jan. 20, 2006.]

UTILITY CONSUMERS' ACTION NETWORK, INC., Plaintiff and Appellant, v.
AT&T BROADBAND OF SOUTHERN CAL., INC., et al., Defendants and Respondents.

COUNSEL

Law Office of Jonathan Weiss and Jonathan Weiss for Plaintiff and Appellant.

White & Case and Bryan A. Merryman for Defendants and Respondents.

OPINION

RUBIN, J.—Plaintiff Utility Consumers' Action Network, Inc. (UCAN), appeals from the summary judgment entered in favor of defendants—numerous AT&T and MediaOne cable Internet service providers—in an action to determine the legality of a late fee liquidated damages provision contained in defendants' service contracts.[1] Plaintiff also appeals from the concomitant order denying its motion for summary judgment. For the reasons set forth, *post*, the trial court's summary judgment orders were correct, and we affirm the judgment that followed.

## ISSUE PRESENTED

Businesses with half a million customers use standardized form contracts that include a liquidated damages provision for a late fee whose amount is conceded to be reasonable. Is that provision of a consumer services contract invalid simply because the businesses did not sit down and negotiate the late fee amount individually with each customer? Because the language used by our courts refers to a reasonable endeavor *by the parties* when setting the amount of liquidated damages, UCAN would have us answer "yes" to that question. Dissection and deconstruction of the decisions underpinning the reasonable endeavor requirement confirm, however, what common sense commands: that the answer is "no."

## FACTS AND PROCEDURAL HISTORY

UCAN is a nonprofit consumer advocacy group. Respondents are cable Internet service providers. UCAN sued respondents for unfair competition

---

[1] The named AT&T defendants are: AT&T Broadband of Southern California, Inc.; AT&T Broadband Network Solutions, Inc.; AT&T Broadband Cablevision of Sacramento I, LLC; AT&T Broadband Cablevision of Sacramento II, LLC; AT&T Broadband Phone of California, LLC; AT&T Broadband HC of California, LLC; and AT&T Broadband HC of Delaware, LLC. The named MediaOne defendants are: MediaOne of Cypress, Inc.; MediaOne of Fresno, Inc.; MediaOne of Harbor, Inc.; MediaOne of Lakewood, Inc.; MediaOne of Lomita, Inc.; MediaOne of Los Angeles County, Inc.; MediaOne of Los Angeles, Inc.; MediaOne of Newhall, Inc.; MediaOne of North Valley, Inc.; MediaOne of Northern California, Inc.; MediaOne of Orange County, Inc.; MediaOne of Sierra Valleys, Inc.; MediaOne of South Central Los Angeles, Inc.; and MediaOne Telecommunications of California, Inc. For ease of reference, we will refer to these entities collectively as respondents.

(Bus. & Prof. Code, § 17200), alleging that the late fee liquidated damages provision in respondents' service agreements was illegal because the amount of liquidated damages provided by the agreement was unilaterally set by respondents and was not the result of mutual negotiations between respondents and their individual subscribers.[2]

UCAN and respondents brought simultaneous summary judgment motions based primarily on stipulated facts to determine the legality of the liquidated damages clause. The late fee provision stated that the subscribers agreed to pay any fees or charges, including administrative late fees, charges and assessments. The agreement stated that charges for late payment and nonpayment were "liquidated damages intended to be a reasonable advance estimate of our costs resulting from late payments or non-payments by our customers, which costs will not be readily ascertainable, and will be difficult to predict or calculate, at the time that such administrative late fee(s) and related charges are set because it would be difficult to know in advance: (a) whether you will pay for the Service on a timely basis, (b) if you do pay late, when you will actually pay, if ever, and (c) what costs we will incur because of your late payment or non-payment. . . ." It also provided that the amount of those fees and charges would be posted at respondents' Web site or would be mailed to the subscriber before any late fees were charged. The late fee did not exceed $4.75. At all relevant times, respondents had more than 500,000 subscribers.

It was undisputed that respondents might take a variety of steps to collect unpaid bills, including phone calls, letters, visits by field collectors, temporary or permanent service disconnections, and referral to an outside collection agency. Respondents' collection costs varied, based on several factors, including the type and number of steps taken to collect the payments, the delinquent subscriber's location and past payment history, and the amount owed. It was also undisputed that due to those varying factors, it was impracticable or extremely difficult to fix ahead of time the actual costs of collecting late payments by individual subscribers. UCAN also stipulated that respondents notified its subscribers of the late fee provision before service began, and gave notice of the amount of the late fee before it was imposed. UCAN stipulated that respondents performed an analysis to determine its actual late payment costs, and that, according to the analysis, those costs were greater than the $4.75 late fee. Finally, for the purposes of the summary judgment motions, UCAN conceded that the late fee charged by respondents was reasonable.

---

[2] UCAN also sued respondents for unfair competition in connection with their cable television and cable telephone service contracts. Respondents' demurrers to those causes of action were sustained without leave to amend, and the claims were dismissed without prejudice. This appeal does not concern those causes of action.

The trial court ruled that where a liquidated damages clause was included in a preprinted form contract, the law applicable to contracts for the sale of consumer goods and services does not require both parties to actually negotiate the amount of liquidated damages. Instead, so long as the party who presented the form contract had made a reasonable endeavor to determine the amount of such damages, the provision was valid. Because respondents had done so, the court found that the liquidated damages clause in their contracts was valid, granted summary judgment for respondents, and denied UCAN's motion for summary judgment. We agree that the trial court correctly interpreted the law applicable to liquidated damages provisions in this type of consumer contract.[3]

## STANDARD OF REVIEW

Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) In reviewing an order granting summary judgment, we must assume the role of the trial court and redetermine the merits of the motion. In doing so, we must strictly scrutinize the moving party's papers. The declarations of the party opposing summary judgment, however, are liberally construed to determine the existence of triable issues of fact. All doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment. While the appellate court must review a summary judgment motion by the same standards as the trial court, it must independently determine as a matter of law the construction and effect of the facts presented. (*Barber v. Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 562 [42 Cal.Rptr.2d 697].)

A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subds. (o)(2), (p)(2).) If the defendant does so, the burden shifts back to the plaintiff to show that a triable issue of fact exists as to that cause of action or defense. In doing so, the plaintiff cannot rely on the mere allegations or denial of her pleadings, "but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (Code Civ. Proc., § 437c, subd. (p)(2).) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party

---

[3] UCAN contends that because the liquidated damages provision is invalid, respondents are limited to recovering their actual damages, if any, under Civil Code sections 3302 and 3358. Because we hold that the liquidated damages provision is valid, UCAN's argument necessarily fails.

opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

## DISCUSSION

### 1. *The General Law of Liquidated Damages*

██ The parties to a contract may agree in advance to liquidate their damages—to provide ahead of time that a certain sum of money is conclusively presumed to represent the amount of damage that will be caused by a specified breach of the contract. (*Allen v. Smith* (2002) 94 Cal.App.4th 1270, 1278 [114 Cal.Rptr.2d 898].) Until 1978, former Civil Code section 1670 provided that a liquidated damages clause was void unless it complied with former Civil Code section 1671, which said: "The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage." (See *H. S. Perlin Co. v. Morse Signal Devices* (1989) 209 Cal.App.3d 1289, 1295, & fn. 3 [258 Cal.Rptr. 1] (*Perlin*).)

██ In 1977, the Legislature adopted a California Law Revision Commission recommendation which repealed former Civil Code section 1670.[4] Civil Code section 1671 was amended to favor liquidated damages except in contracts for the sale or lease of consumer goods and services, or in residential leases. (*Perlin, supra*, 209 Cal.App.3d at pp. 1297–1298.) In *non-consumer* contracts, the new law stated that a liquidated damages provision was valid unless the party seeking to invalidate that provision "establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." (Civ. Code, § 1671, subd. (b); see *Perlin*, at pp. 1297–1298.)[5] When a liquidated damages provision is contained in a *consumer* contract or a *residential lease*, "the prior law under former Sections 1670 and 1671, continued in subdivision (d)" still applies. (Cal. Law Revision Com. com., 9 West's Ann. Cal. Civ. Code (1985 ed.) foll. § 1671, p. 498; see § 1671, subds. (c), (d).) Subdivision (d) of section 1671 (section 1671(d)) is therefore virtually identical to former sections 1670 and 1671 and states that in consumer contracts and residential leases "a provision in a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the

---

[4] We will refer to the California Law Revision Commission as the Commission and to its 1977 report (Recommendation Relating to Liquidated Damages (Dec. 1976) 13 Cal. Law Revision Com. Rep. (1976) p. 1738) as its Report.

[5] All further undesignated section references are to the Civil Code.

case, it would be impracticable or extremely difficult to fix the actual damage." (§ 1671(d).) It is undisputed that the contracts at issue here qualify as consumer services contracts under section 1671(d).

■ Because the current law governing liquidated damages in consumer contracts is a continuation of prior law on the subject, decisions interpreting former section 1671 apply with equal force here. Those cases developed a two-part test for determining whether a liquidated damages provision was valid. The first tracks the statutory language: fixing the amount of actual damages had to be impracticable or extremely difficult. The second is a judicially crafted requirement: the amount selected must "represent a reasonable endeavor by the parties to estimate fair compensation for the loss sustained." (*Rice v. Schmid* (1941) 18 Cal.2d 382, 385–386 [115 P.2d 498] (*Rice*).) Determining whether a reasonable endeavor was made depends upon both (1) the motivation and purpose in imposing the charges, and (2) their effect. If the amount selected is designed to substantially exceed the damages suffered, and its primary purpose is to serve as a threat to compel compliance through the imposition of charges bearing little or no relationship to the amount of actual loss, then the purported liquidated damages provision is an invalid attempt to impose a penalty. (*Garrett v. Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731, 739 [108 Cal.Rptr. 845, 511 P.2d 1197] (*Garrett*).) Because decisions such as *Rice* state that the selected amount of liquidated damages must result from a reasonable endeavor by the *parties*, UCAN contends that a sum selected by only one party in that party's preprinted form contract is invalid. The decisions cited by the Commission's report when discussing the reasonable endeavor requirement convince us that UCAN is wrong.

In the following section, we analyze the Commission's Report and the California cases on which it relied to reach the conclusion that mutual negotiation is not required in this setting. Neither the California nor out-of-state authorities on which UCAN relies actually support its position, nor does a Commission study prepared by a law professor from the University of California at Berkeley.

### 2. *The Commission's Report*

The Commission's Report was adopted by the Legislature without change. (*Guthman v. Moss* (1984) 150 Cal.App.3d 501, 510 [198 Cal.Rptr. 54].) We therefore give that Report substantial weight when interpreting section 1671(d). (*Hong v. Somerset Associates* (1984) 161 Cal.App.3d 111, 115, fn. 6 [207 Cal.Rptr. 597].) The introduction to the Commission's Report notes the language of former section 1671 and its requirement that fixing the amount of damages be impracticable or extremely difficult. (Report, 13 Cal. Law

Revision Com., *supra*, p. 1739.) The Report then mentions the reasonable endeavor requirement: "In addition, the courts have developed a second requirement that the provision must reflect a 'reasonable endeavor' to estimate actual damages." (*Ibid.*) In a footnote to that sentence, the Commission cited two cases—*McCarthy v. Tally* (1956) 46 Cal.2d 577, 584 [297 P.2d 981] (*McCarthy*) and *Better Food Mkts. v. Amer. Dist. Teleg. Co.* (1953) 40 Cal.2d 179, 187 [253 P.2d 10] (*Better Food*)—as direct authority for the reasonable endeavor requirement. Using the citation signal "see also," the Report also cited *Garrett, supra,* 9 Cal.3d 731, and *Clermont v. Secured Investment Corp.* (1972) 25 Cal.App.3d 766 [102 Cal.Rptr. 340] (*Clermont*). (Report, *supra,* p. 1739, fn. 3.)

We find it significant that the Commission did not state that *the parties* must make a reasonable endeavor to estimate actual damages. Instead, its Report said that the liquidated damages provision "must reflect" a reasonable endeavor to do so. Its omission of the "by the parties" language is explained by the Commission's citations to *Better Food, supra,* 40 Cal.2d 179—where the Supreme Court held that the reasonable endeavor requirement was satisfied even though the liquidated damages provision at issue was part of a standardized form contract—and to *McCarthy, supra,* 46 Cal.2d 577, 585, footnote 4—where the court stated that the validity of a liquidated damages provision depended upon its proportional relation to the damages that might be caused by a breach of contract. We continue our analysis with the cases upon which the Commission principally relied.

A.  *The* Better Food *Decision*

The plaintiff in *Better Food* was a grocery company that contracted with the defendant to install a burglar alarm system, then monitor that system, and notify the police if the alarm were triggered. After the plaintiff lost more than $35,000 to burglars, it sued the defendant for breach of contract because the defendant failed to notify the police that the store's burglar alarm had gone off. The plaintiff appealed from a directed verdict for the defendant, and the Supreme Court reversed, holding that there were factual questions which, if resolved in plaintiff's favor, could support a judgment for the plaintiff.

The Supreme Court also held that any recovery for plaintiff would be limited to $50, pursuant to the contract's liquidated damages provision. In upholding the validity of that provision, the court considered the plaintiff's contention that the amount agreed upon did not represent a reasonable endeavor to estimate the probable damages because the liquidated damages provision was found in a form contract used by the alarm company with all of its subscribers. The court said that the amount of liquidated damages "must represent the result of a reasonable endeavor by the parties to estimate a fair

average compensation for any loss that may be sustained." (*Better Food, supra,* 40 Cal.2d at p. 187.) Even though the liquidated damages provision was found in a form contract, and even though the defendant did not investigate the plaintiff's manner of doing business or the character and value of it stock, "the parties agreed to the liquidation provisions, and there is no evidence that they were not fully aware of circumstances making it desirable that liquidated damages be provided for." (*Ibid.*) The court therefore took no issue with the fact that the liquidated damages provision was found in a nonnegotiated form contract.[6]

### B. *The* McCarthy *Decision*

The court in *McCarthy, supra,* 46 Cal.2d 577, considered the validity of a liquidated damages provision contained in a lease of a summer resort. In one action, the lessee sued the lessor for fraud. In a separate action, the lessor sued the lessee to establish certain rights under the lease and for appointment of a receiver. The actions were consolidated for trial and resulted in separate judgments. In the first action, the court found for the lessor. In the second action against the lessee, the court awarded the lessor actual damages, but declined to award greater damages provided by the lease's liquidated damages clause. Under that provision, if the lessor terminated the lease for any reason, or if the premises were abandoned, the lessor would receive $10,000 as liquidated damages.

The Supreme Court reversed the judgment and remanded for a new trial because the trial court made inconsistent findings concerning the liquidated damages provision. In discussing that issue, the Supreme Court noted that the amount agreed upon as liquidated damages must represent a reasonable endeavor by the parties to estimate a fair average compensation for their loss. However, the court held, there was nothing in the record to show that the $10,000 sum provided by the lease represented such a reasonable endeavor. (*McCarthy, supra,* 46 Cal.2d at p. 584.) In a footnote to that passage, the *McCarthy* court explained: "This reasonable endeavor to ascertain, in advance, the loss which may result from a possible breach distinguishes a provision for liquidated damages from one for a penalty since the characteristic feature of a penalty is its lack of any proportionate relation to the damage which may actually stem from the breach of a contract [citations]." (*Id.* at p. 585, fn. 4.)

### 3. *The* Dyer Bros. *and* Rice *Decisions*

The *Better Food* court cited only two decisions when describing the reasonable endeavor requirement: *Dyer Bros. Golden West Iron Works v.*

---

[6] Whether $50 was or was not a reasonable liquidated damages is not germane to our discussion—apparently it satisfied the Supreme Court. Our consideration of the case is limited to its lineage in the "reasonable endeavor" test.

*Central Iron Works* (1920) 182 Cal. 588 [189 P. 445] (*Dyer Bros.*) and *Rice, supra,* 18 Cal.2d at page 386. (*Better Food, supra,* 40 Cal.2d at p. 187.) *McCarthy, supra,* 46 Cal.2d at pages 584 and 585, footnote 4, cited *Better Food, Dyer Bros., Rice,* and other authorities when discussing that requirement.[7] A complete understanding of *Better Food* and *McCarthy* therefore demands a complete understanding of *Dyer Bros.* and *Rice.*

### A.   Dyer Bros.

The oldest and most widely cited decision on the "reasonable endeavor" requirement is *Dyer Bros., supra,* 182 Cal. 588. The plaintiffs in *Dyer Bros.* were members of a group of steel and iron manufacturers who agreed to act in concert to oppose their workers' salary demands. As part of that agreement, each member promised to pay a certain sum of money in the event that member breached the agreement and failed to act in unison with the others. The defendants were group members who allegedly breached the agreement. The trial court granted the defendants' demurrers without leave to amend on several grounds, including the contention that the agreed-upon sum of money for any breach was an invalid penalty and not a proper liquidated damages provision. The Supreme Court reversed.

Citing the language of former section 1671, the court held that the plaintiffs adequately alleged the existence of a valid liquidated damages provision when their complaint stated that it was impracticable and extremely difficult to determine or prove the amount of damage from a breach. Nowhere, however, did the *Dyer Bros.* court use the phrase "reasonable endeavor" or otherwise state that the parties had to negotiate the amount of liquidated damages. Instead, the court said, "Looking to the entire agreement, its scope, purpose, and subject matter, and considering the result of a breach and the reasonableness of the sums agreed to be paid therefor, it is clear that there was an intent to estimate a just compensation for the loss sustainable in the event of a failure to comply with the agreement." (*Dyer Bros., supra,* 182 Cal. at p. 593.)

---

[7] In addition to *Better Food, Dyer Bros.,* and *Rice,* the *McCarthy* court cited to the Restatement of Contracts, section 339 (Restatement), when it mentioned the reasonable endeavor requirement. (*McCarthy, supra,* 46 Cal.2d at p. 584.) We will discuss Restatement section 339 as part of our analysis of the *Rice* decision, *post.* When discussing how the validity of a liquidated damages clause turned on its proportional relation to potential actual damages, *McCarthy* relied on *Dyer Bros., People v. Central Pacific R.R. Co.* (1888) 76 Cal. 29 [18 P. 90], and *Muldoon v. Lynch* (1885) 66 Cal. 536 [6 P. 417]. (*McCarthy,* at p. 585, fn. 4.) Both *Muldoon* and *Central Pacific* focused on the amount of liquidated damages in determining whether it allowed for a just compensation. (*Central Pacific,* at pp. 36–38; *Muldoon,* at pp. 539–541.)

### B. Rice v. Schmid

The first time the term "reasonable endeavor" appears in our liquidated damages jurisprudence is in *Rice, supra,* 18 Cal.2d 382. The plaintiff in that case was a wholesale flour merchant who sued a bakery owner for breach of a contract to buy flour. The sales contract included a liquidated damages provision. At trial, the plaintiff was awarded his actual damages, but appealed because he believed the trial court erred by not awarding him liquidated damages instead. The Supreme Court held that the liquidated damages clause was invalid because it would not have been impracticable to determine the amount of the plaintiff's actual damages.

In their cross-appeal, the defendants also challenged the provision because it was part of a standard form contract. Because the court believed the provision was invalid on other grounds, it expressly refrained from reaching that issue. Even so, the court mentioned the issue, citing *Dyer Bros., supra,* 182 Cal. at page 593, for the proposition that "[a] valid liquidated damage clause must, of course, represent a reasonable endeavor by the parties to estimate fair compensation for the loss sustained." (*Rice, supra,* 18 Cal.2d at p. 386.) The *Rice* court noted that the contract before it was a standard form widely used in sales between flour manufacturers and flour buyers, and that its use had been approved by the courts of other states. However, the *Rice* court declined to decide whether those decisions might apply when the contract was used in a sale between a flour *merchant* and a flour buyer. (*Id.* at pp. 386–387.)

### C. *The Meaning of* Dyer Bros. *and* Rice

In *Dyer Bros., supra,* 182 Cal. 588, there was no indication of how the amount of liquidated damages was determined, or who took part in that determination. Nowhere did that court mention the need for a reasonable endeavor by the parties in fixing the amount of liquidated damages. Instead, without citation to authority, the *Dyer Bros.* court held that there was "an intent to estimate a just compensation for the loss sustainable" from a breach, and found that intent based on the "entire agreement, its scope, purpose, and subject matter, and considering the result of a breach and the reasonableness of the sums agreed to be paid therefor . . . ." (*Id.* at p. 593.) In short, the intent to estimate a fair amount as liquidated damages was based in large part on whether the amount selected was reasonable in light of the nature of the breach and the harm caused.

*Rice, supra,* 18 Cal.2d 382, cited *Dyer Bros.* for the proposition that the validity of a liquidated damages clause turned in part on whether it represented "a reasonable endeavor by the parties to estimate fair compensation for the loss sustained." (*Id.* at p. 386.) This statement was dicta and came as part of an

acknowledgement that courts in other states had approved liquidated damages provisions in form contracts. More noteworthy, however, are the other authorities cited by *Rice* to support its statements concerning the reasonable endeavor requirement. These included 3 Williston, Contracts (1936) p. 2192, section 779 (Williston), Restatement section 339, and a law review article. (Arndt, *Liquidated Damages in California* (1921–1922) 10 Cal. L.Rev. 8, 14 (Arndt); *Rice,* at p. 386.) All three sources demonstrate that the focus had been more on the *amount* of liquidated damages, and not the process by which that amount was derived.

· At the page cited by *Rice,* the Arndt article describes how *Dyer Bros.* clarified the test for determining whether the parties intended to liquidate damages or prescribe a penalty. According to Arndt, "[t]he important element in determining intent . . . is the reasonableness of the stipulated sum. If there is an intent to fix liability 'without any reference to the actual damage to be sustained,' the stipulated sum is a penalty, but if there is an intent 'to establish a just compensation for the loss sustained,' it is enforceable as liquidated damages." (Arndt, *supra,* 10 Cal. L.Rev. at p. 14.) On the preceding page, Arndt made clear that "intent" in this context meant "legal intent" that would be imputed to the parties based on the language used, and not their actual intention at the time of contracting. (*Id.* at pp. 13–14.) While earlier cases focused on whether the contract used the term "liquidated damages" or "penalty" to determine what was intended, later cases changed that focus, "and the rule laying special emphasis upon the reasonableness of the agreed sum is now well established in California." (*Id.* at p. 14.)

Section 779 of Williston also focused on the overriding importance of the reasonableness of the sum selected in a liquidated damages provision. "To be sure, under the decisions of the most authoritative courts, the primary question seems to be whether the parties honestly endeavored to fix a sum equivalent in value to the breach. *But as has been seen, the chief, almost the only, means of determining whether the parties in good faith endeavored to assess the damages is afforded by the amount of damages stipulated for, and the nature of the breach upon which the stipulation was agreed to become operative. This is but saying in other words that the reasonableness or unreasonableness of the stipulation is decisive.*" (Williston, *supra,* § 779, p. 2192, italics added.)

Restatement section 339 also focused on the amount selected. Under that rule, liquidated damages provisions were not enforceable unless "the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach" (Rest., § 339 (1)(a)), and it would be very difficult to accurately estimate the amount of damages. (Rest., § 339 (1)(b).) The Restatement is silent as to how or by whom that forecast is made.

Based on the facts and issues presented by *Rice* and *Dyer Bros.* and the authorities they relied upon, we believe the reasonable endeavor test they prescribed had more to do with the result and effect of a liquidated damages provision and nothing to do with whether both parties to the contract negotiated the amount of liquidated damages. When *Better Food* relied on those decisions to validate the use of a form contract's liquidated damages provision, it must have had that rationale in mind. The same is therefore true for *McCarthy, supra,* 46 Cal.2d 577.

### 4. *Negotiation by Both Contracting Parties Is Not Required by the Reasonable Endeavor Test*

Returning to our starting point—the Commission's Report that was the basis for section 1671(d)—we conclude that the reasonable endeavor test does not require both parties to a form contract to expressly negotiate the amount of liquidated damages. First, as noted earlier, when the Report describes the test, it omits the "by the parties" language. Second the omission appears deliberate. The two decisions cited in the Report as direct authority for the reasonable endeavor test were *McCarthy, supra,* 46 Cal.2d 577, and *Better Food, supra,* 40 Cal.2d 179. The Commission's reliance on those two decisions shows that their standards were imported into the Commission's Report. (*Perlin, supra,* 209 Cal.App.3d at pp. 1297–1299.) *Better Food* held that the use of a form contract could satisfy the reasonable endeavor requirement. *McCarthy* cited *Better Food* when discussing that requirement. Both *Better Food* and *McCarthy* cite decisions such as *Dyer Bros.* and *Rice,* which in turn rely on other authorities that focused primarily on the reasonableness of the sum of liquidated damages to determine whether a reasonable endeavor to estimate a fair compensation was made, not on the presence of bilateral negotiations. (See *McCarthy,* at p. 585, fn. 4 [the difference between a reasonable endeavor to ascertain damages and a penalty is a penalty's lack of a proportion relation to potential actual damages]; Arndt, *supra,* 10 Cal. L.Rev. at p. 14 ["[t]he important element in determining intent . . . is the reasonableness of the stipulated sum"]; Williston, *supra,* p. 2192 ["the chief, almost the only means, of determining whether the parties in good faith endeavored to assess the damages is afforded by the amount of damages stipulated for . . ."].)

Even *Garrett, supra,* 9 Cal.3d 371, which is now considered the leading case on the reasonable endeavor test (see *Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 931, fn. 16 [216 Cal.Rptr. 345, 702 P.2d 503]), and which was also cited by the Commission's Report, sets a standard that differs little from the one announced in *Dyer Bros. Garrett* was a class action brought on behalf of more than 5,000 home loan borrowers who contested the fairness of a late charge provision in their promissory notes. Under that provision, if the borrower defaulted, a late charge of 2 percent of the unpaid principal

balance of the loan would be charged until the default was cured. The plaintiffs contended that the provision was an unlawful liquidated damages clause. The defendant bank contended that the provision did no more than offer the borrower an option of alternative performances by increasing interest payments if the borrower elected not to make his payments on time. The trial court sustained a demurrer to the cause of action, but the Supreme Court reversed.

Looking to the substance of the disputed provision, not its language, the Supreme Court concluded that the only reasonable interpretation was to construe it as a penalty that violated former section 1671. In referring to the reasonable endeavor requirement, *Garrett* cited only *Dyer Bros., Rice, Better Food*, and Restatement section 339. The court noted that late charges are presumably imposed to compensate the lender for its administrative and other expenses and to encourage timely payments. Determining whether those charges represent a reasonable endeavor to estimate fair compensation depends upon the motivation, purpose, and effect of the charges. If the amount charged is designed to greatly exceed the lender's damages, then its primary purpose is to compel prompt payment by the threat of charges that bear little or no relationship to the lender's actual loss. As a result, it is a penalty. Using that standard, the court held that the charges imposed by the bank were punitive because they were based on the unpaid principal, not on the lender's costs. (*Garrett, supra*, 9 Cal.3d at pp. 738–740.)

Not only did *Garrett* rely on some of the same authorities as we do—*Dyer Bros., Rice, Better Food*, and Restatement section 339—but we see little difference between its rule and that articulated in *Dyer Bros., supra*, 182 Cal. at page 593: that the intent to estimate a just compensation for the loss from a breach is determined by looking at the "entire agreement, its scope, purpose, and subject matter, and considering the result of a breach and the reasonableness of the sums agreed to be paid therefor."[8]

---

[8] The only other decision cited by the Commission's Report for the reasonable endeavor test was *Clermont, supra*, 25 Cal.App.3d 766. (Report, 13 Cal. Law Revision Com., *supra*, p. 1739, fn. 3.) At issue in *Clermont* was whether class action plaintiffs had alleged that the defendant home mortgage lender was charging either usurious interest or liquidated damages for late payments. Because the late fee was based on the amount of the outstanding loan balance, and because the defendant said the fee was designed to compensate for the costs incurred due to late payments, the appellate court held that the plaintiffs had alleged the existence of a liquidated damages provision. (*Clermont*, at p. 769.) Although the issue was not before it, the appellate court noted that, upon remand, the validity of that provision would turn on whether determining the amount of actual damages had been impracticable, and on whether the amount of the late fee bore "some reasonable relation to probable loss . . . ." (*Id.* at pp. 770–771, citation omitted.) As did so many other courts, *Clermont* made no mention of a mutually negotiated amount and focused instead on the reasonableness of the amount selected.

Nor was *Better Food* the only court to endorse nonnegotiated liquidated damages clauses. The court in *Lowe v. Massachusetts Mut. Life Ins. Co.* (1976) 54 Cal.App.3d 718 [127 Cal.Rptr. 23] (*Lowe*), considered the validity of a liquidated damages clause in an action by a developer to recover a $94,000 standby deposit retained by the defendant lender pursuant to the terms of the lender's loan commitment letter to finance a $4.7 million project. The liquidated damages provision was part of the plaintiff's written application, and stated that the required deposit would be returned if the loan were completed, but would be retained as liquidated damages if the plaintiff did not go through with the loan. The deposit amount was later increased as part of the application approval and loan commitment letter prepared by the defendant. When the plaintiff failed to complete the loan transaction, the defendant kept the deposit. The trial court found for the defendant and refused to order the return of the plaintiff's deposit.

On appeal, the *Lowe* court affirmed the validity of the liquidated damages provision, rejecting the plaintiff's contention that it was a penalty. Although the plaintiff characterized the loan commitment letter as an adhesion contract, the court held that it was not necessary for the parties to bargain over the amount of liquidated damages so long as the amount agreed upon was reasonable under all the circumstances.

Synthesizing *Dyer Bros., Rice, Better Food*, and other decisions, the *Lowe* court held that it "was not necessary for the prospective lender to review all of its possible damages with the applicant. There is no evidence to show that the [plaintiff] was not aware of the circumstances making it desirable to provide for some compensation to the financial institution if the loan were not taken. The evidence shows that the sum bears a reasonable relationship to the expenses and damages the lender would incur. In the exercise of its business judgment the applicant . . . accepted the terms offered by the financial institution. There is sufficient evidence of agreement." (*Lowe, supra*, 54 Cal.App.3d at pp. 735–738; see *Perlin, supra*, 209 Cal.App.3d at pp. 1297–1300, and *Feary v. Aaron Burglar Alarm, Inc.* (1973) 32 Cal.App.3d 553, 557–558 [108 Cal.Rptr. 242], both following and applying *Better Food, supra*, 40 Cal.2d 179.)

We recognize that *Better Food, Feary*, and *Perlin* all involved burglar alarm monitoring contracts with liquidated damages clauses that closely resembled limitations on liability. *Lowe*, however, was not a burglar alarm contract case. Most important, when the Commission's Report cited to *Better*

*Food* as authority for the reasonable endeavor test, it did not limit or qualify its application and instead, it appears to have endorsed it for general application.

Neither *Better Food* nor *Lowe* articulated a rationale or underlying policy behind its rulings, however, leaving that task to us. As discussed *ante*, the reasonable endeavor test looks primarily to the intent of the parties, as determined by the purposes behind a liquidated damages clause and the relationship between the amount of liquidated damages and a fair estimate of the actual damages from a breach of the contract. (*Garrett, supra*, 9 Cal.3d at pp. 738–740; *Better Food, supra*, 40 Cal.2d at p. 187; *Rice, supra*, 18 Cal.2d at pp. 386–387.) In the context of mass consumer transactions involving standardized form contracts, those standards are not necessarily undermined by nonnegotiated liquidated damages provisions.

Liquidated damages do serve an important function. They remove the uncertainty factor from determining damages from a breach of contract and reduce litigation. (*Allen v. Smith, supra,* 94 Cal.App.4th at p. 1278.) Requiring a large enterprise to negotiate the terms of a late fee provision with thousands or hundreds of thousands of potential customers would effectively make it impossible to provide for late fees, even when they are warranted by the impracticability of determining damages and even when the amount selected by the business was designed to do no more than cover its damages and bore the proper relationship to the amount of such damages. We refuse to endorse such an interpretation of the reasonable endeavor requirement.[9]

---

[9] In *Hitz v. First Interstate Bank* (1995) 38 Cal.App.4th 274, 291 [44 Cal.Rptr.2d 890] (*Hitz*), a case involving the validity of credit card late fee charges, the court held that the lender had to conduct some type of analysis to satisfy the reasonable endeavor test. We asked for and received supplemental briefs from the parties concerning whether the stipulated facts about respondents' late fee analysis constituted a reasonable endeavor. UCAN contends that it stipulated to no more than the existence and the contents of the analysis, and never stipulated that the result was correct or that the analysis was performed in a reasonable manner. In its summary judgment reply brief, however, UCAN stated the issues "surrounding . . . the reasonableness of [respondents'] charges have been taken off the table by UCAN's stipulation *not to dispute* the facts relating to those issues. . . . Instead, UCAN agreed *to not dispute* certain irrelevant facts so that the dispositive issue of mutuality could be reached." (Original italics.) We, therefore, agree with respondents that UCAN did not contest the reasonableness of respondents' analysis and effectively conceded the point below.

Though we do not reach the issue, we are concerned with *Hitz*'s interpretation of *Garrett, supra*, 9 Cal.3d 731, as focusing solely on the intent behind a liquidated damages provision, not on whether the amount selected was disproportionate to the loss from the breach. (*Hitz, supra*, 38 Cal.App.4th at p. 289.) As we have already mentioned, *Garrett* differs little from *Dyer Bros.* and instructs that the existence of a reasonable endeavor turns on the motivation and *effect* of a liquidated damages provision.

### 5. *UCAN's Contrary Authorities Are Not Persuasive*

#### A. *California Appellate Court Decisions*

The primary decisional authority for UCAN's position is *United Sav. & Loan Assn. v. Reeder Dev. Corp.* (1976) 57 Cal.App.3d 282 [129 Cal.Rptr. 113] (*Reeder*), where the court held a liquidated damages provision was invalid because both parties had not negotiated the amount. The plaintiff in *Reeder* was a savings and loan association that agreed to sell land to a developer for $243,000. Their contract included a provision that allowed the seller to keep the buyer's $20,000 deposit as liquidated damages if escrow did not close. The parties stipulated to the following facts: the sales contract was drafted by the plaintiff's lawyer; the liquidated damages provision was not suggested by the defendant and was not discussed with the defendant; the defendant's representative read the agreement before signing; and all parties were sophisticated and knowledgeable in such transactions.

On appeal from a judgment for the plaintiff, the *Reeder* court reversed, holding that the liquidated damages provision was unenforceable because both parties did not take part in the effort to determine the amount of liquidated damages. Although the savings and loan believed it was impracticable to fix the amount of damages from a breach, "it was purely a determination made by [the savings and loan], with no discussion between [the savings and loan] and Reeder as to how the $20,000 figure for liquidated damages was calculated." (*Reeder, supra,* 57 Cal.App.3d at pp. 300, 302.)

*Reeder* cited *Dyer Bros., Rice,* and other decisions. As demonstrated, *ante, Dyer Bros.* and *Rice* do not stand for the proposition that both parties must negotiate the amount as a prerequisite to the validity of a liquidated damages clause. Instead, our courts' most significant decisions on the reasonable endeavor test, along with the treatises and academic interpretations they relied on, all point to the conclusion that it is the end result which counts, not the number of parties who took part in reaching that result. *Reeder* did not discuss those authorities or otherwise analyze *Rice* or *Dyer Bros.* Although *Reeder* acknowledged the existence of *Better Food, supra,* 40 Cal.2d 179, it did so through nothing more than its use of the citation signal "but see," thereby failing to analyze that decision as well. (*Reeder, supra,* 57 Cal.App.3d at p. 300.) Finally, *Reeder* involved an individually drafted agreement, not a standardized form contract. We therefore conclude that *Reeder* was wrongly decided and is inapplicable.

In addition to *Reeder*, UCAN relies on two decisions that appear to have followed it: *Westinghouse Electric Corp. v. County of Los Angeles* (1982) 129 Cal.App.3d 771 [181 Cal.Rptr. 332] (*Westinghouse*), and *Barbera v. Sokol* (1980) 101 Cal.App.3d 725 [161 Cal.Rptr. 843] (*Barbera*). At issue in *Westinghouse* was the validity of a liquidated damages clause in a 1973 public construction contract. Although former sections 1670 and 1671 presumed that liquidated damages provisions were void, that rule did not apply to public works contracts, the court held. (*Westinghouse*, at pp. 782–783.) When discussing the requirements of former sections 1670 and 1671, the *Westinghouse* court cited *Reeder* for the proposition that both parties had to endeavor to determine the amount of liquidated damages, but stated that *Better Food* announced a different rule "where the impracticability of fixing actual damages appeared as a matter of law." (*Westinghouse*, at p. 782.) The court held that because actual damages could not have been determined as a matter of law, the rule of *Better Food* applied, making the liquidated damages provision valid. (*Id.* at p. 783.) Frankly, we do not know what to make of the *Westinghouse* decision. Although it cited *Reeder* for the mutual endeavor requirement, that does not appear to have been an issue in the case. Its interpretation of *Better Food* is at best incomplete and fails to touch on the issue before us. In any event, because we hold that *Reeder* is unsound, so too is *Westinghouse* to the extent it depends on *Reeder*.

As for *Barbera*, it involved a negotiated construction subcontract that was, in part, standardized, and in part typewritten. A late fee for construction delays was included in the typewritten portion. Citing to *Reeder*, the appellate court reversed a judgment refusing to enforce that provision, holding that the evidence concerning whether the parties actually negotiated that provision was in conflict, thus bringing into play the presumption against the validity of a liquidated damages clause. (*Barbera, supra*, 101 Cal.App.3d at pp. 732–734.) We believe this case too is distinguishable. First, to the extent it uncritically followed *Reeder*, it was wrongly decided. Second, at issue was a negotiated contract between contractors, with the liquidated damages provision found in the nonstandardized portion of the agreement. Therefore, *Barbera* is also factually inapplicable.

UCAN also relies on two other decisions which we believe are likewise distinguishable and inapplicable: *Bondanza v. Peninsula Hospital & Medical Center* (1979) 23 Cal.3d 260 [152 Cal.Rptr. 446, 590 P.2d 22] (*Bondanza*), and *Vath v. Hallett* (1916) 31 Cal.App. 290 [160 P. 1065]. In *Bondanza*, the court invalidated a liquidated damages provision that did not specify any amount, but instead permitted the defendant to recover its "reasonable" expenses for collecting on unpaid accounts. In that context, the court held that the parties had failed to agree to the amount of collection costs. (*Bondanza*, at p. 266.) In *Vath*, the defendant borrowed $6,000 to start a liquor store. As part of the agreement, the defendant promised to buy his liquor from the

plaintiff-lender, and also agreed to pay $3,000 if he breached that agreement. On appeal from an order sustaining a demurrer to the complaint, the appellate court held that the contract was fatally uncertain. The liquidated damages clause was also unenforceable because it provided for payment of the entire $3,000 regardless of when the breach occurred or how small it was. As a result, the contract showed on its face that there had been no good faith valuation of the plaintiff's potential damages. Citing to a treatise on evidence, the court also said that the amount of damages must have been the " 'subject of actual and fair calculation and adjustment between the parties.' " (*Vath*, at pp. 294–295.) Missing from the decision is any description of how the liquidated damages amount was determined and whether it was the subject of mutual negotiations. As a result, we believe *Vath* was yet another case that turned on the amount of liquidated damages and whether or not it provided fair compensation for one party's loss.

### B. *Excerpts from the Commission's Report and Background Study*

The Commission first proposed changes to former sections 1670 and 1671 in 1973, after examining a background study prepared by law professor Justin Sweet. (Recommendation and Study Relating to Liquidated Damages (Nov. 1973) 11 Cal. Law Revision Com. (1973) pp. 1203, 1229–1292 (Sweet).)[10] Sweet described the potential for abuse in adhesion contracts that provided for liquidated damages because of the parties' unequal bargaining power and because, as a practical matter, most consumers do not read such contracts. (Sweet, 11 Cal. Law Revision Com. (1973) p. 1232.) To counter this, Sweet suggested that the Legislature consider special treatment for consumer contracts. (*Id.* at p. 1292.) UCAN relies on these selected excerpts from the Sweet article to support the mutual negotiation requirement. Its reliance is misplaced.

First, when the Commission initially recommended changing the law in 1973, its letter to the Governor stated that even though it was submitting Sweet's background study along with the Commission's recommendations, "[o]nly the recommendation (as distinguished from the background study) expresses the views of the Commission." (Sweet, 11 Cal. Law. Revision Com., *supra*, p. 1203.) Although that statement was not included in the Commission's two other recommendations (Report, 13 Cal. Law Revision Com., *supra*, pp. 1737, 2141), we find it unlikely that the Commission had any different intention as to its later recommendations.

---

[10] Professor Sweet's background study first appeared as a law review article. (Sweet, *Liquidated Damages in California* (1972) 60 Cal. L.Rev. 84.) We will refer to the Commission's 1973 report when citing to the Sweet article.

Second, regardless of the effect to be given the Sweet article, it ultimately did not differ from our interpretation of the law. When discussing the process by which the stipulated amount of damages is determined, Sweet acknowledged that *Better Food* and *McCarthy* were the leading cases. (Sweet, 11 Cal. Law Revision Com., *supra*, p. 1283.) After summarizing other decisions, including some which ostensibly called for negotiations by both parties, Sweet also acknowledged that the selection process did not live up to the articulated test. (*Id.* at pp. 1283–1284.) Instead, as the use of form contracts continued to rise, Sweet predicted that "we can expect even fewer stipulated damages that are actually a jointly determined estimate of actual damages." (*Id.* at pp. 1284–1285.) He concluded his thought by stating that even though the case law called for a reasonable endeavor by the parties, "it really does not matter what process is used to select liquidation amounts as long as the amount selected is within the realm of reason." (Sweet, 11 Cal. Law Revision Com., *supra*, pp. 1283–1285.)

Elsewhere, Sweet recommended that despite the potential for abuse in adhesion contracts, "we should not automatically deny even the dominant party . . . the power to control damages. Rather, we should scrutinize liquidation clauses in adhesion contracts with great care to determine their fairness, with the burden of showing fairness being upon the proponent of the clause—in most cases, the stronger party." (Sweet, 11 Cal. Law Revision Com., *supra*, p. 1291, fn. omitted.) That is precisely the effect of section 1671, as amended by the Legislature in response to the Commission's Report: liquidated damage clauses in consumer contracts are presumed void, placing the burden on the proponent of the clause to rebut that presumption. (*Garrett, supra*, 9 Cal.3d at p. 738.)

Because the Commission's Report stated that "the limitations of existing law should be retained and additional protection provided" where the parties have unequal bargaining power (Report, 13 Cal. Law Revision Com., *supra*, at p. 1741), UCAN also believes the Report, and, ultimately, the current version of section 1671, must have intended to provide additional protections in the form of the mutual negotiation requirement. Once more, UCAN is wrong. First, UCAN fails to point to any portion of section 1671 or the Report which specified any additional protections. Second, the portion of the Report quoted by UCAN is found in the Report's introduction. In the section where it actually made its recommendations, the Commission merely said that "in order to continue the protection now given to significantly weaker and less experienced contracting parties, the rule expressed in [former sections] 1670 and 1671 should continue to apply where the contract is a consumer contract . . . ." (Report, *supra*, at p. 1742.) Third, as the Commission's own comment to section 1671 makes clear, the law under former sections 1670 and

1671 continues to apply to consumer contracts. (§ 1671, subds. (c), (d); Cal. Law Revision Com. com., 9 West's Ann. Civ. Code (1985 ed.) foll. § 1671, pp. 497–498.) As explained at length, *ante*, that law does not require mutual negotiations for standardized adhesion contracts.

Finally, UCAN points to the Report's failure to mention *Lowe, supra*, 54 Cal.App.3d 718, as proof that the Commission did not intend to endorse that decision. Although true, the Report also failed to mention *Reeder, supra*, 57 Cal.App.3d 282. It did, however, cite directly to *Better Food* and *McCarthy* as authority for the reasonable endeavor requirement.

### C. *Decisions from Other States*

UCAN also contends that decisions from North Dakota and South Dakota support its interpretation of the reasonable endeavor requirement: *Hofer v. W. M. Scott Livestock Co.* (N. D. 1972) 201 N.W.2d 410 (*Hofer*) and *Anderson v. Cactus Heights Country Club* (1963) 80 S.D. 417 [125 N.W.2d 491]. *Anderson* involved a statute similar to former sections 1670 and 1671, and cited *Better Food* for the proposition that a reasonable endeavor by the parties was required. We believe *Anderson* is inapplicable for two reasons: (1) because it involved what appears to have been a mutually negotiated contract to design and supervise the construction of a golf course; and (2) because the validity of the disputed liquidated damages provision turned solely on whether the amount selected was disproportionate to the actual damages that could have resulted, not on whether both parties negotiated that amount. (*Anderson*, at pp. 420–422.)

The same is true of *Hofer, supra*, 201 N.W.2d 410, which involved a land sales contract and also turned on whether the liquidated damages amount set forth in the contract was disproportionate and therefore punitive under a statute similar to ours. (*Id.* at pp. 413–414.) Further, to the extent UCAN relies on North Dakota's interpretation of California law to support its arguments, it has overlooked a far more recent decision by North Dakota's Supreme Court—*City of Fargo v. Case Development Co.* (N. D. 1987) 401 N.W.2d 529. In upholding the validity of a liquidated damages provision in a public construction contract, the court considered and rejected the contention that California law required a reasonable endeavor by both parties when determining the amount of liquidated damages. Citing to *Better Food, supra*, 40 Cal.2d 179, the *City of Fargo* court said that "California has liberally construed its 'reasonable endeavor' requirement and does not require face-to-face negotiations of the amount of liquidated damages . . . ." (*City of Fargo*, at p. 533.)

## DISPOSITION

For the reasons set forth, *ante*, the summary judgment in favor of respondents, and the order denying UCAN's motion for summary judgment, are affirmed. Respondents to recover their costs on appeal.

Cooper, P. J., and Flier, J., concurred.